--------

IRON SILVER MINING Co. *v.* CHEESMAN and others.

*(Circuit Court, D. Colorado.* May 27, 1881.)

1. MINING CLAIM—VEIN OR LODE.

The claimant of a mining claim, upon location properly made, is entitled to the vein upon which the claim has been located, and all other veins and lodes having their top or apex within the territory included by the lines of the location.

2. SAME—SAME.

Where such veins or lodes are *in place,* the claimant is entitled to the same not only within the lines of the location, but as far as they may pass beyond those lines in their descent into the earth.

3. SAME—SAME.

Such vein or lode is a body of mineral or mineral-bearing rock within defined boundaries in the general mass of the mountain.

4. SAME—SAME.

Such vein or lode is in place if the ore body is continuous to the extent that it may maintain that character whether deposited in that form or removed bodily with its enclosing rocks to the place in which it may be found.—[ED.

In 1874 A. B Wood located the Lime lode and mining claim, situated in Lake county. The location was made upon a body of mineralized limestone, not upon a lode or vein, as defined by the statute. In 1877, upon proceedings had, a patent was issued for the claim to its owners. In the fall of 1877 George Nyce and others located what was called the Smuggler claim and lode. It was situated to the east

of, and adjoining, the Lime, and before locating it the discoverers sunk a shaft to the depth of 40 feet, and at the bottom found a large body of mineral. After the location of the Smuggler, its owners commenced running inclines and drifts, and in them also developed a considerable body of mineral. After the discovery of the mineral in the Smuggler claim, the owners of the Lime run inclines from the Lime claim into and upon the Smuggler claim, and connected them with the Smuggler workings. Thereupon the Iron Silver Mining Company, which previously had purchased the Lime claim, commenced their action against defendants, who had become the owners of the Smuggler, to eject them from the body of mineral they had discovered and developed within the Smuggler location, claiming that it was the lode or vein of mineral which had its apex within the Lime claim. This the Smuggler owners disputed, claiming that there was no vein or lode within the Lime ground; that whatever mineral was there was not in place, but had been removed to that point from some other locality; and that it was found in a formation so broken and jumbled that there was neither foot nor hanging walls to it. It was upon this disputed question of fact that the trial was had, and the instructions of the court were directed to its elucidation, and were as follows.

*G. G. Symes* and *Jonas Seeley*, for plaintiff.

*Markham, Paterson, Thomas & Campbell*, and *J. B. Belford*, for defendants.

HALLETT, D, J. I presume, gentlemen, that you feel some relief that you are approaching the time when you will be relieved from the consideration of this case. You have given careful attention to the evidence produced, and I presume that you are disposed to give it the consideration which the importance ascribed to the case by the parties seems to demand. If we are to believe some of the witnesses who have testified here, the property is of very little value indeed. But the elaborate preparations that have been made for the trial of the case seem to contradict that statement. At least, the opinion of the parties must be that the claim is of some value, and it seems to me that perhaps the value may be, (I do not state this as a matter that is of any importance in your consideration of the case,) but perhaps the value of it may be in the minds of the parties as relating to other territory which may lie to the east of it. Whoever may triumph here on the principles which have been recognized in respect to these lodes, it is possible that other controversies may arise in respect to other territory lying to the east of both claims. And

as to that matter, whether it is true or not, it is not very important which one of these parties shall succeed in this controversy.

Something of an appeal was made to you by counsel as to the wrong that would be done if either of these parties should be encouraged to maintain the view that this lode may be pursued beyond the side line of the claim. Whichever of these parties may triumph, it is possible that that view may be asserted by the successful party hereafter against other parties who are not involved in this controversy. But all that is of no importance here, nor is it matter for your consideration at this time.

While adverting to matters which are not important for consideration, I may with propriety mention some other matters. It is not a question of any importance whether this claim is or is not a valuable one. It is the purpose of the law to decide all controversies on the same principles and by the same rules, whatever values may be involved. Perhaps, as we are constituted, it may not be possible to exclude from our minds all consideration of the importance of a controversy in determining it, but we ought to do so. Everybody in the administration of the law should do so, for that is the method of the law, and the way in which we should proceed to the determination of every question which may arise between parties. We should determine it upon a principle and by a rule which may reach everybody and apply to all, without reference to the circumstances that may be in issue in the case which is under consideration. And in that view it is not a matter of importance whether one or the other of these parties is entitled to sympathy, or to a more favorable consideration than the other; nor is it a question whether one or the other of the parties is a corporation. Some allusion has been made by counsel, as I think, improperly, to the fact that one of these parties is a corporation. It has been said the power of corporations is growing in this country and becoming oppressive, particularly that of railroad corporations and telegraph companies; and perhaps we may concede some of these things. But, whether we do so or not, we should not make any different rules for corporations than those which apply to individuals in the courts, at least until the law shall authorize us to do so; not until competent authority shall say that there shall be one rule for corporations and another for individuals.

Another matter which is not of any importance in the consideration of the case is the varying surveys of the Lime location. You remember that some of the witnesses testified that surveys have been made since the first location of the claim which do not coincide with that

which was first made. As to the matters here presented for your consideration, that is not a question of any importance in this suit. Probably the plaintiff is confined to the monuments originally located. If it be true, as stated by some of the witnesses, that the Lime was first located further to the west, the plaintiff would be confined to that territory, if an issue should be made upon that point. But the issue here is as to the whole of this claim, and there is no testimony showing the existence of a difference in the condition of the ground, or of the existence of a lode or vein, if any does exist, in the part which is included in the last survey and not in the first; that is, the small strip of territory along the east side of the claim which may have been included in the last survey, but not in the first. So that is not a matter of any importance.

Of course there has been considerable said by counsel on both sides upon other matters, as to ability of counsel, and good sense and character and personal relations, which have nothing to do with the case. I suppose it is hardly necessary to mention that.

Now, as to the matters which are in issue between the parties. You have observed that there is no conflict upon the surface of the ground, except, perhaps, it may be as to the small strip along the east side of the Lime claim and the west side of the Smuggler claim as to which there may be conflicting surveys, and which I have stated to you is of no importance in this suit. There is no conflict upon the surface of the ground. The plaintiff, by patent from the government issued to persons who located the claim, holds the absolute title to what has been described before you as the Lime location; and we may say that as to the surface, and all that rightfully goes with the surface, the plaintiff is the absolute owner of that territory. We may say, also, that as to the Smuggler location these defendants, although they have not a government title, a title by patent, are the owners of the surface and all that rightfully goes with the surface of the Smuggler location. So that we have no controversy upon that point.

The law provides that upon a location properly made, and whenever patent has been issued, we assume in all controversies between individuals that the location is properly made. The law provides that upon a location properly made the claimant shall have the vein upon which the location is made, and all other veins and lodes having their top or apex in the territory within the lines of the location, and not only within the body of the claim, within the lines of the location, but beyond these lines as far at the vein or lode may, in its descent into the earth, pass beyond those lines and within the end lines of the

location. Now, upon that, plaintiff here claims that the lode in controversy, or ground in controversy, if there is a lode in it, originates in its territory by its top or apex, and descends upon its dip through and under the other claim; and they have sought, by numerous witnesses and elaborate preparation, to maintain that view before you. And the question, as it is presented to my mind, is a very simple one. Upon that I have written something here for your instruction, which I will read.

Whether in the ground in controversy there is a vein or lode bearing silver, within the meaning of the act of congress, is the principal question in this case. The words used in the statute to designate a mineral deposit in rock in place are *vein, lode,* and *ledge,* and these are supposed to be nearly synonomous in meaning. However these words may differ in meaning, it is not important in this case to look for a distinction between them. Nor is it important to define their meaning in a manner that may be accepted in all cases. Any effort so to define them would probably result in a failure; but we must seek for a meaning which will enable us to reach a conclusion in this case. So proceeding, it is enough to say that a vein or lode is a body of mineral or mineral-bearing rock within defined boundaries in the general mass of the mountain. This is a sufficient description, certainly, as to all bodies of ore that may be found within the lines of the location. As to what may be found in the body of the claims, there being no conflicting location, it is not very important to consider whether it is in place. But the statute, giving the right to pursue the lode beyond the lines of the location in a downward course, refers to veins or lodes *in place,* and whenever such right may be claimed or asserted, it is important to consider whether the vein or lode, or that which may be alleged to be such, is *in place* within the meaning of the act of congress. And, first on that point, it may be said that if the ore body is continuous to the extent that it may maintain that character, it is in place. So far as the ore body is continuous, it must have been deposited in that form or removed bodily, and with its inclosing rocks, to the place in which it may be found. And in either case, as to such continuous ore body, it is proper to say that it is in place within the meaning of the act. And this is the point in controversy between the parties. You will remember that the witnesses for the plaintiff unite in saying that the ore extends with more or less uniformity, and that it is practically continuous from the plaintiff's claim into and through the defendants' claim, so far as it has been explored. The plaintiff produced assayers to testify that

samples of ore were taken from all parts of the vein, and found to contain silver and lead. The maps put before you by plaintiff to show the condition of the ground give the vein as extending from one claim to the other; and clearly that is the position assumed.

On the other hand, defendants contend that the ground in controversy is so broken, and the several parts so intermingled, that there is not, and cannot be, a body of ore extending for any considerable distance through any part of it. They have many witnesses to testify to that condition of the ground. They concede that in the ground in controversy there are detached fragments, particles, and perhaps masses of ore intermingled with the country rock in the like fragments, particles, and masses; but they deny that there is anything like a continuous body or sheet of ore extending from one claim to the other. And this is the question in issue. It is pretty nearly a direct issue between the witnesses for the plaintiff and the witnesses for the defendants, and, as you give credit to one party or the other, you should find the fact. I don't think that I can in any manner make it clearer to you. I have to say, also, that the burden of proof is upon the plaintiff by a preponderance of testimony to establish the facts which are necessary to support a finding in its favor; and the fact mainly in issue, as I have stated to you, is: What is the condition of this ground extending from one of these claims into the other?

A good deal has been said by the witnesses as to whether there is a top or apex of the vein. That depends, gentlemen, very much as to whether there is any vein or lode there. If you find that there is a vein or lode, to my mind the evidence is clear enough that the top of it is in the Lime location; and if there is none there, of course that which does not exist, does not exist in any part—it does not exist by its top nor by its bottom, nor anywhere between the two points. So that it is, gentlemen, a question of the credibility of witnesses. The testimony is strongly conflicting—I don't think I have ever known a case in which it was more so; and, as I have said, the question is as to which one of these theories you will accept.

Now, I ought to say to you, further, that as to this ore body that I have spoken of, whether it is of greater or less extent—that is, whether it is very thin or very thick—is immaterial. If it extends, as claimed by the plaintiff, from their claim to and into the other, the strength of the vein is not material. Their position is, as you remember, that it extends all the way from their claim to and into the other, so far as it has been explored, and it is not material whether it is strong or weak, if it extends in the manner described by them.

But if the territory is, as claimed by the defendant, so broken up, jumbled, and mixed, the several parts together, that there is nothing continuous, of course there can be no lode extending from one claim to the other.