## MONTANA COAL AND COKE COMPANY, APPELLANT, *v.* ALEXANDER LIVINGSTON, TREASURER OF PARK COUNTY, RESPONDENT.

[Submitted March 23, 1898.   Decided April 11, 1898.]

*Taxation—Net Proceeds of `Coal Mines—Constitution—Interpretation of.*

1. TAXATION—*Net Proceeds of Coal Mines.*—The annual net proceeds of coal mines acquired under the laws of the United States relative to the acquisition of coal lands, are subject to taxation under Section 3, Article 12 of the State Constitution, and Section 3672 and Section 3760 *et seq.* of the Political Code.
2. CONSTITUTION—*Interpretation of.*—In interpreting the Constitution, effect must, if possible, be given to every section and clause.

*Appeal from District Court, Park County, Frank Henry, Judge.*

APPLICATION by Montana Coal & Coke Company, a corporation, against Alexander Livingston, treasurer of Park county, Montana, for injunction.   The injunction was denied and plaintiff appeals.   Affirmed.

*Cullen, Day & Cullen,* for Appellant.

We contend that the assessment of net proceeds of the property of the plaintiff in this proceeding is illegal, (1) for the reason that it is unauthorized by the acts of the legislature, and (2) if the acts of the legislature be construed to authorize such an assessment, they are unconstitutional.   Section 3672 of the Political Code, which is a part of Chapter I, Title X., Part III, of the Political Code, entitled ''Property liable to taxation,'' provides that ''the annual net proceeds of all mines and mining claims shall be taxed as other personal

property." Section 3760 of the Political Code, which is a portion of Chapter IV, of Title X, and is entitled "Assessment of Net Proceeds of Mines," provides that "Every person, corporation or association engaged in mining upon any quartz vein or lode or placer mining claim containing gold, silver, copper, coal, lead or other valuable mineral deposits, must, between the first and tenth day of June of each year, make out a statement of the gross yield of the above named metals or minerals, from each mine owned or worked by such person, corporation or association, during the year preceding the first day of June, and the value thereof." Then follows in the succeeding sections provisions for deducting from such gross yield, the cost of extracting, transporting and reducing the ore or mineral taken from said mines, and the net proceeds so established form the basis of the assessment. It seems to us that the language of this section is so plain and definite that there can be no controversy about its meaning; that these provisions are made applicable only to persons engaged in mining upon quartz lodes or placer claims, and by the express admission of the pleadings in this case the plaintiff is not engaged in such business. The net proceeds of plaintiff's business, if they can be assessed at all, must be assessed in compliance with the law relative to the assessment of "other personal property," as provided in Section 3672, which other personal property is to be assessed with reference to its ownership and situation on the first Monday in March of each year. (Political Code, Section 3700.)

But we do not believe that the net proceeds of the business of persons engaged in mining for coal are the subject of taxation as a separate class, but that the net proceeds, together with the other personal property of the corporation, are to be taxed as the property of the corporation at a uniform rate of assessment and taxation. The Constitution provides, in Article XII, Section 3, as follows: "All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed

at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes, in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law; and all machinery used in mining, and property and surface improvements upon or appurtenant to mines, and mining claims which have a value separate and independent of such mines or mining claims, and the annual net proceeds of all mines and mining claims shall be taxed as provided by law.'' It will be noticed that this provision starts out with the proposition that ''All mines and mining claims'' shall be taxed; then follows a limitation, ''both placer and rock in place,'' accompanied by a further limitation, ''containing or bearing gold, silver, etc.'' The terms ''Mines and mining claims'' at the time of the adoption of the constitution were terms in common use which had a clearly defined and well established meaning.

Mr. Justice Miller, in *Forbes* v. *Gracey*, 94 U. S. 762, affirming the same case, Fed. Cases 4924, had said that the term ''mines'' referred to the title to the soil which the owner held after he had obtained a patent from the United States under the provisions of the Mineral Lands Act; while the term ''mining claims'' referred to the possessory right by which the owner held and worked the soil prior to obtaining that patent. Thus these two terms describe the character or extent of the ownership. The terms ''placer and rock in place'' were equally well known and had an equally clearly defined and well established meaning given them by the laws of the United States as well as by custom. These terms referred to the character of the mineral contained in the mines or mining claims. The insertion of the word ''coal'' in the constitutional provision gives to these other terms no additional meaning, nor can it operate in any way to extend them. Prior to 1864 coal was not even considered a mineral within the meaning of the land laws of the United States, but by a statutory enact-

ment in that year, coal lands were declared to be mineral lands within the meaning of the pre-emption act, and were thus distinguished from agricultural lands, and it is by virtue of this statutory declaration that coal lands have ever been held to be mineral lands. ( *U. S.* v. *Mullen*, 118 U. S., 271; affirmed 10 Fed. 785.) But whether mineral or not, they have never been included in the term as applied to quartz and placer claims. And the title to coal lands is obtained through a different procedure. (Revised Statutes of U. S., Title 32, Chapter 6.) The use of the modifying phrase "both placer and rock in place" at the beginning of the section of the constitution limits the terms "mines and mining claims" as used in the subsequent portion of the section to mines and mining claims of the class designated as placer and rock in place. The word "both" here is a word of exclusion. It is a thoroughly well settled rule of construction that when general terms are used and the statute enumerates the particulars under a *videlicit*, it shows the intention of the legislature to limit the comprehensiveness of the general phraseology to the particulars enumerated and those of the same class and the general terms of the section will be held to refer to those of the class particularized. (Black on International Law, Section 6163. *U. S.* v. *Wesie*, Fed. Cas. 16659.) No objection was made in the court below to the proceedings upon the ground of plaintiff's possessing an adequate remedy at law. If, however, the court should have any doubt upon the question as to our right to an injunction, we would submit that under the provisions of Section 3768 of the Political Code, the tax levied for these net proceeds is declared to be a lien upon the mining claims from which the ores are mined or extracted, and under the provisions of Section 3897, the treasurer's deed will be *prima facie* evidence that the property is lawfully assessed and that the taxes were levied in accordance with law. This would constitute a cloud upon the title of the plaintiff and it is well settled that equity will intervene to prevent a cloud upon the title where the tax is illegal. The fact that the law also provides a remedy by payment of taxes under protest in an action

to recover the same back, does not oust the equitable jurisdiction. These propositions are thoroughly discussed and settled in a late case by Judge Knowles in the Federal Circuit Court involving the consideration of the statute here in controversy. (*Brown* v. *French*, 80 Fed., 166.)

*C. B. Nolan*, Attorney General, and *W. H. Poorman*, Attorney for Park County, for Respondent.

Section 16, Article XII, of the Constitution, provides that "All property shall be assessed in the manner prescribed by law except as is otherwise provided in this constitution." Section 18, of the same article, provides that "The Legislative Assembly shall pass all laws necessary to carry out the provisions of this article." Counsel also cites Section 3, (found in appellant's brief). As directed by the constitution, the Legislative Assembly provided as follows: "All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal, or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim is used for other than mining purposes, and has a separate and independent value for such other purposes, in which case said surface ground, or any part thereof, so used for other than mining purposes shall be taxed at its full value for such other purposes; and all machinery used in mining and all property and surface improvements upon or appurtenant to mines and mining claims which have a value separate and independent of such mines or mining claims, and the annual net proceeds of all mines and mining claims shall be taxed as other personal property." (Section 3672, Political Code.) Sections 3760 to 3768, inclusive, of the Political Code, contain specific directions as to how the assessment shall be made and the tax collected. The appellant contends that if the net proceeds of coal mines can be assessed at all, they must be assessed as other personal property, and that coal mines are not included in the terms, "mines and mining"

claims, as used in the sections of the Constitution and Political Code above referred to. The power of the legislature to classify property for assessment and taxation, except when expressly limited by constitutional provisions, is too well established to require the citation of authorities. It will be observed that Section 3672, *supra*, provides that "the annual net proceeds of all mines and mining claims shall be taxed as other personal property." The assessment of the net proceeds of mines, however, is regulated by Section 3760 *et seq.* It is nowhere provided that they shall be assessed as other personal property, and we submit that the contention of appellant that they should have been assessed in that manner is without merit. As to the contention of appellant that coal mines are not included in the terms "mines and mining claims," it has been repeatedly held by the Department of the Interior and the Supreme Court of the United States that coal lands are mineral lands. Coal lands are mineral lands, and as such are excluded from pre-emption and homestead claims. (*Townsite of Coalville*, 4 General Land Office, 46.) Coal lands are mineral lands, and are to be acquired only under laws specifically applicable thereto. (*Mullin* v. *United States*, 118 U. S., 271, affirming *United States* v. *Mullin*, 7 Sawyer, 466.) It is immaterial at what date coal was first classed as a mineral. It was so classed and recognized at the time the constitution and statute were adopted. The term "coal mines" is frequently used in the codes. (Sections 3350 to 3372, Political Code.)

Section 3, Article XII, of the Constitution, *supra*, provides for the taxation of three classes of property, (1) the taxation of the surface ground of mining claims; (2) the taxation of mining machinery and implements; (3) the taxation of the annual net proceeds of all mines and mining claims.

If there is any force at all in the contention of the appellant, it is limited to the taxation of the surface ground of mining claims, for it will be noticed that in providing for the taxation of the net proceeds all mines and mining claims are included. The first part of the section in question relates to the taxation of the surface ground of all mines and mining

claims, and it is in this connection only that the clause ''both placer and rock in place'' is used.   The clause ''both placer and rock in place'' is explanatory, and not a modification.   It is reasonable to presume that this clause was inserted for the purpose of explaining—not limiting—that which goes before it, and of showing that the phrase, ''all mines and mining claims,'' preceding it included quartz lode and placer mining claims, as well as all other mines and mining claims.   This construction is supported by the fact that the section in question specifically mentions gold, silver, copper, lead, coal and other valuable mineral deposits, although coal is not the product of what are commonly understood as quartz lode and placer mining claims.   If the framers of the constitution meant to include only this class of claims, why did they not use those terms instead of ''all mines and mining claims,'' and why did they make specific mention of products that are never found in quartz lode and placer mines?   All mineral products were included.   The section specifically mentions some and then adds, ''or other valuable mineral deposits.''   The last clause of the section, providing for the taxation of the net proceeds of ''all mines and mining claims,'' is an independent provision, preceded by a co-ordinate connective, and has nothing to do with the clause, ''both placer and rock in place.''   It applies indiscriminately to the product of all mines, and as coal is a product of a ''mine,'' it necessarily follows that it is within the meaning of this constitutional provision.   Taxation is the rule, and exemption the exception, and it would be hard to give a reason, under this constitutional provision and the code provisions, *supra*, why one mineral product should be taxed and not another.   Both the constitution and the Code make specific mention of ''coal'' as a proper mineral product for taxation, and if it was not meant that it should be taxed in this way, why was it so specified?   Nor does the phrase ''rock in place'' necessarily apply only to quartz lode claims.   Rock in place is any stratified rock that has not been removed from the place of its formation, and it is applicable to coal mines as it is to any other mine.   In Lindley on Mines, Section 323,

the following language is found: "It may be said that ordinarily nothing but metalliferous ores are encountered in rock in place. There are, however, exceptions to this rule. Coal occurs in many instances with as pronounced dip and strike as in the auriferous quartz lode." (See also, Id. Sections 299, 300 and 301.)

A legislative construction has been placed upon mineral claims by Section 3672 of the Political Code, and as that section and Section 3760 *et seq.* are practically the same as the section of the constitution above referred to, the discussion of the constitution applied with equal force to the statute. 'In the case of a doubtful or ambiguous law, the contemporaneous construction of those who have been called upon to carry it into effect is entitled to great respect, and ought not to be overruled without cogent reasons." (*United States* v. *Moore*, 95 U. S., 760; *Brown* v. *United States*, 113 U. S., 568; *Barden* v. *N. P. R. R.*, 154 U. S., 328.)

HUNT, J. Injunction. Plaintiff's application for an injunction restraining the sale of certain coal properties for nonpayment of taxes was denied. Plaintiff appeals.

Plaintiff's business is mining for coal and manufacturing the same into coke. Part of the coal lands described was plaintiff's by purchase from the United States under the land laws of the United States relative to the acquisition of coal lands; part was leased from the Northern Pacific Railroad Company, the said railroad company being the owner of such part by virtue of its land grant from the United States.

The appellant's counsel has presented to the court in his brief and oral argument but a single point, which may be stated in the following language: Are the annual net proceeds of coal mines and mining claims, acquired under the laws of the United States relative to the acquisition of coal lands, taxable by the constitution and laws of the state providing for the assessment of the net proceeds of mines?

Section 3, Article 12, of the constitution of the state, is as follows: "All mines and mining claims, both placer and rock

in place, containing or bearing gold, silver, copper, lead, coal, or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes, in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes, as provided by law; and all machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims which have a value separate and independent of such mines or mining claims, and the annual net proceeds of all mines and mining claims' shall be taxed as provided by law.''

The appellant's construction of the foregoing section is that the net proceeds of coal mines are not the subject of taxation as a separate class of property, but that such net proceeds, together with the other personal property of the corporation, must be taxed as the property of the corporation at a uniform ra e of assessment and taxation. That construction is too narrow. The principle of construction, as applied to a written constitution, is that effect must be given, if possible, to the whole instrument and to every section and clause.

Judge Cooley (Cooley on Constitution, Lim. page 72) says, concerning this rule: ''If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative rather than one which may make some words idle and nugatory. This rule is applicable with special force to written constitutions, in which the people will be presumed to have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, leaving as little as possible to implication. It is scarcely conceivable that a case can arise where a court would be justified in declaring any portion of a written constitution nugatory because of ambiguity. One part may qualify another so as to restrict its operation, or apply it otherwise than the natural

construction would require if it stood by itself; but one part is not to be allowed to defeat another if by any reasonable construction the two can be made to stand together.''

When guided by these rules, it becomes the duty of the judiciary to avoid any construction which will make the word ''coal,'' used in the section quoted, idle and nugatory, or which will eliminate it from the context altogether.

Again, the subject of the whole section under consideration pertains to revenue and taxation necessary for the support of the state, and the object intended to be accomplished is the taxation of the net proceeds of any and all mines which contain valuable mineral deposits. Having collected this intention from the article and section referred to, we shall interpret the words used so as to avoid repugnancies or inconsistencies with such intention. (Sutherland on Statutory Construction § 218.)

Certainly coal is a mineral, classed as such generally, and especially so designated by the framers of the constitution, who authorized the taxation of mines and mining claims ''containing or bearing gold, * * * copper, * * * coal or other valuable mineral deposits.'' Whether or not, from a scientific standpoint, coal is classed by geologists as placer or rock in place, is not of great importance; for we conclude that, in the absence of a constitutional definition of what is placer or what is rock in place—whether scientifically accurate or not, in our interpretation of these words—they must be here defined as sufficiently broad to include all mines and mining claims containing or bearing valuable mineral deposits of the several minerals mentioned in the section cited.

This construction is in accord with the doctrine that general terms of a constitution must receive that interpretation which will include all the instances enumerated as comprehended by them. Accordingly, the classification of valuable mineral deposits, made by the constitution for the purposes of taxation, puts coal as either rock in place or placer. Coal may be rock in place. Lindley on Mines, section 323, states that coal occurs in veins, and often with as pronounced a dip and strike as in the auriferous quartz lodes. And we should say

that coal is meant to be brought within the meaning of the words "rock in place," as used by the constitution; the term "placer," as defined by Judge Blake in *Moxon* v. *Wilkinson*, 2 Mont. 421, and as commonly regarded, being "a superficial deposit which occupies the bed of an ancient river or valley," or by geological authority a term applied to "the auriferous gravels of America."

We have an analogous instance in the classification of minerals by the acts of Congress relating to deposits of cinnabar. The acts of 1866 provided for patents to persons claiming "a vein or lode of quartz or other rock in place, bearing gold, cinnabar or copper"; and although cinnabar is not found in any "lode" or "fissure of the earth's crust," as defined by the geologists, yet it was decided by Judge Field in the Eureka Case, 4 Sawy. 302, Fed. Cas. No. 4,548, that any definition of "lode," as used in the act of Congress, which did not embrace deposits of cinnabar, "would be as defective as if it did not embrace deposits of gold or silver." "The definition of 'lode,' " wrote that learned judge, "must apply to deposits of all the metals named, if it apply to a deposit of any one of them. Those acts were not drawn by geologists or for geologists. They were not framed in the interests of science, and consequently with scientific accuracy in the use of terms. They were framed for the protection of miners in the claims which they had located and developed, and should receive such construction as will carry out this purpose. The use of the terms 'vein' and 'lode' in connection with each other in the act of 1866, and their use in connection with the term 'ledge' in the act of 1872, would seem to indicate that it was the object of the legislator to avoid any limitation in the application of the acts which a scientific definition of any one of these terms might impose." That decision bears directly upon the case before us, and the meaning there put upon the acts of Congress was based upon the same principle of construction applicable to the constitutional provision above cited. The limitations of very technical scientific definitions, if correctly invoked as being applicable to coal as rock in place or placer,

must therefore be avoided, and the annual net proceeds of coal mines and mining claims must be taxed as provided by law.

Passing, now, to the legislation upon the subject, we find Section 3672, Political Code, under the caption of "Property Liable to Taxation," to be a reiteration of the constitutional clause heretofore discussed, making the annual net proceeds of coal mines liable to taxation, and providing, also, that such net proceeds are to be taxed "as other personal property." Section 3760, and those sections which follow 3760, provide for the assessment of the net proceeds of mines and the manner of the collection of the tax. Section 3760 in detail requires "every person * * * engaged in mining upon any quartz vein or lode, or placer mining claim, containing gold, silver, copper, coal or other valuable mineral deposit," to make out a statement of the gross yield of the above-named "metals or minerals," etc. We are of the opinion that, under the same rules of construction which we applied to the constitutional section, persons engaged in mining upon "any quartz vein or lode or placer mining claim containing * * * coal" are just as liable to the duty of making the statement required by Section 3760 as are those engaged in mining gold or silver or copper. When the legislature adopted the code sections referred to pertaining to the assessment of the net proceeds of mines, they were dealing with the matter of the practical means of acqiring revenue for the state; and, by including coal miners as those engaged in mining upon quartz veins or lodes or placer mining claims, they classified such persons with relation to methods and conveniences in the assessment of the proceeds of coal mines, rather than by any standard of the scientific definitions of quartz veins or lodes or placer mining claims which were to be assessed. Uncertainties arising out of the meaning of the words "quartz" and "placer" must therefore be resolved before the easily ascertained and controlling intent, which was to include persons owning coal mines, and the net proceeds of such mines, as within the provisions of the statutes. (Eureka Case, *supra.*)

Our judgment is that the order appealed from be affirmed.

*Affirmed.*

Pemberton, C. J., and Pigott, J., concur.