NOYES ET AL., APPELLANTS, *v.* CLIFFORD, RESPONDENT.

(No. 2,502.)

(Submitted March 16, 1908.   Decided March 28, 1908.)

[94 Pac. 842.]

*Ejectment—Mines—Lode and Placer Claims—"Known" Vein or Lode—Definition—Evidence—Admissibility—Review.*

Ejectment—Mining Claims—Evidence—Order of Proof.
   1.   Plaintiffs, in an action in ejectment, owned a patented placer mining claim. After issuance of patent defendant located a quartz lode claim within the boundaries of the placer location, claiming a strip of land twenty-five feet in width on either side of the vein (U. S. Rev. Stats., sec. 2333). Plaintiffs introduced in evidence the patent and the record of deed from the patentees to them and rested. Defendant thereupon introduced one of the locators of the lode claim, who testified, over objection, to the character of the discovery made and the steps taken to complete the location. *Held,* that the evidence was not objectionable because introduced before it had been shown that the vein or lode was known to exist at the date of the application for the placer patent.

Same—Order of Proof—Discretion—Review.
   2.   The objection referred to in the foregoing paragraph went to the order of proof, which is within the discretionary control of the court, subject to review only in case of abuse of discretion.

Same—Placer Claim—Patent—Location of Lode Claim—Rights of Locator.
   3.   If the lode or vein located within the limits of plaintiffs' placer claim was excepted from the terms of their patent, it, together with twenty-five feet on either side thereof, was open to exploitation and location by any citizen of the United States (U. S. Rev. Stats., sec. 2333), and, for the purpose of such exploitation, defendant was entitled to enter into possession of it.

Same—Evidence—Character of Vein.
4.   Evidence of defendant in the above action touching the character, extent and value of the vein as apparent at the time he made his location within the boundaries of the placer claim, was properly ad- mitted on the issue whether it was such a vein as would justify a location of it and the expenditure of labor and money for the pur- pose of developing and utilizing its contents.   Evidence of what it contained at the date of the location was evidence of what its con- tents were at the time plaintiffs made application for patent to the placer claim.

Same—Evidence—Representation Work—Harmless Error.
5.   The admission in evidence of affidavits showing that defendant had caused the annual representation work to be done from year to year after his lode location was made, but failing to disclose that such work had been performed on a strip fifty feet in width along the vein, was not prejudicial error, where it subsequently appeared by fair in- ference that all of the work had been done along the vein itself.   The evidence was competent as showing good faith on the part of the lo- cator.

Same—Expert Testimony—Admissibility.
6.   On the issue whether the vein within the boundaries of plaintiffs' placer claim was of sufficient value to justify exploitation and develop- ment so as to except it from the terms of the placer patent, the opin- ion of a practical miner, based on many years' experience and obser- vation in the district, and who was acquainted with the ground in controversy, that the claim could be worked, that the prospects were good and that the vein carried some mineral values, was admissible as bearing upon the conditions obtaining at the time the application for the placer patent was made.

Same—"Vein or Lode"—Definition.
7.   *Held*, that the meaning given to the term "vein or lode," as used in section 2320, U. S. Rev. Stats., must also be applied to that expression in section 2333.

Same.
8.   An instruction defining "vein or lode" (U. S. Rev. Stats., sec. 2333) as "a body of mineral or mineral-bearing rock within defined boundaries in the general mass of the mountain," was correct.

Same—"Known" Vein or Lode—Definition.
9.   The court correctly instructed the jury that a "known" vein or lode, within the meaning of section 2333, United States Revised Stat- utes, is one known to exist as a clearly ascertained vein, of sufficient extent to render the land more valuable on that account and to justify its exploitation for the extraction of mineral therefrom, and properly refused to charge that it was one sufficient in value to justify working it as a mine with profit without previous exploitation.

Same—Known Vein or Lode—Question for Jury.
10.   The questions whether a vein was known to exist, within the boundaries of a placer claim at the date of the application for pat- ent, as a clearly ascertained one, and whether it contained such values as made the ground more valuable on that account and justified ex- ploitation, were for the jury.

Same—Conflicting Evidence—Review.
11.   A finding of the jury on the above questions when based on con- flicting evidence will not be disturbed on appeal.

*Appeal from District Court, Silver Bow County; Jno. B. Mc-Clernan, Judge.*

EJECTMENT by John Noyes and others against J. A. Clifford. Judgment for defendant, and plaintiffs appeal from an order denying their motion for a new trial. Affirmed.

*Messrs. McBride & McBride, Mr. M. P. Gilchrist,* and *Mr. Chas. Mattison,* for Appellants.

*Mr. C. F. Kelley,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action in ejectment. The plaintiffs claim title in fee and right to the possession of a tract of placer mining ground situate in Silver Bow county, and described as "embracing the S. ½ of the N. W. ¼, the S. W. ¼ of the N. E. ¼, and fractional lot No. 3, of section 24, township 3 N. of range 8 W., containing 153.49 acres, excepting and excluding that portion of the surface ground of said premises, which is embraced by lots No. 154 and 208 as represented on the plat of the survey by Thomas F. Baker for the claim of Lewis Stettheimer upon the Frankie lode."

The plaintiff Noyes and others applied to the United States for a patent to these premises on July 18, 1879, and a patent was issued to them on April 15, 1881. The plaintiffs other than Noyes obtained their respective interests by mesne conveyances from the patentees. The defendant claims that at the date of the application for the patent there was known to exist in the ground covered by plaintiffs' claim a vein of quartz in place bearing gold and silver; that, since no claim was made thereto by plaintiffs in their application, it was excluded from the patent, together with a strip of land twenty-five feet in width on either side thereof; that to this extent the premises claimed by the plaintiffs remained and continued to be, not-

withstanding the issuance of the patent, unoccupied public mineral land of the United States, open to exploration by any citizen of the United States; that on May 20, 1890, the defendant, together with one Tatum and one Brennen, all being citizens of the United States, entered thereon, and, having made a discovery of the vein, located the same as the Ambrose quartz lode claim in compliance with the laws of the United States and the state of Montana; and that thereafter the defendant acquired the interests of his associates. The Ambrose location as made covers an area 1,500 feet in length by 600 feet in width, the locators at the time it was made supposing it was so laid along the vein or lode that the parallel end lines would be intersected by it. It was subsequently ascertained that, though the apex of the vein does intersect the east end line, it crosses the north side line, and passes out of the claim at a point 1,017.5 feet west of the east end line, so that the area in dispute, excluding all the area covered by the location except the vein and twenty-five feet on either side, may be roughly described as a strip 1,017.5 feet in length by fifty feet in width, extending in a northwesterly direction from the east boundary of plaintiffs' premises.

The trial resulted in a verdict and judgment for the defendant. Plaintiffs have appealed from an order denying their motion for a new trial. It is alleged that the court erred to the prejudice of plaintiffs in admitting certain evidence and in charging the jury. It is also contended that the evidence is insufficient to sustain the verdict.

1. The plaintiffs, having introduced in evidence the original patent from the United States and the record of deeds from the patentees to plaintiffs other than Noyes, rested. Thereupon P. T. Brennen, one of the locators of the Ambrose lode claim, was sworn and examined as to the facts touching the character of the discovery made and the steps taken to complete the location. To all this evidence objection was made that it was not material or competent for any purpose until it had been shown that the vein or lode was known to exist at the date of the application

for the patent. The objection was properly overruled. It went only to the order of proof. There was, in fact, no real controversy but that the Ambrose location was valid at the time it was made, provided the vein was open to location; and this part of the evidence, necessarily a part of defendant's case as made by his answer, was introduced in order to open the way to the main controversy in the case, namely, whether the vein or lode was known to exist at the date of the application for patent, within the meaning of the statute. (U. S. Rev. Stats., sec. 2333 [U. S. Comp. Stats. 1901, p. 1433].) Without proof of location, thus showing his connection with the paramount title of the United States, the defendant had the right to question the *prima facie* title of plaintiffs as exhibited by their patent by showing that the vein was known to exist at the time the application for the patent was made, and thus justify his apparent intrusion upon plaintiffs' premises. (*Reynolds* v. *Iron Silver Min. Co.*, 116 U. S. 687, 6 Sup. Ct. 601, 29 L. Ed. 774.) If the lode or vein was excepted by the terms of the patent, it, together with twenty-five feet on either side thereof, was open to exploitation and location by any citizen of the United States; and, for the purpose of such exploitation, the defendant was entitled to enter into possession of it. The defendant was not obliged to pursue this course, however. He could first show, as he did, that he had taken the steps necessary to acquire the inchoate title, and then proceed with the evidence tending to support it by showing that the vein was open to location. In any event, the order of proof is always within the discretionary control of the court, and, unless there appears to have been an abuse of discretion by which the objecting party has suffered prejudice, error cannot be alleged, though the logical order has not been pursued. (*Starr* v. *Gregory Con. Min. Co.*, 6 Mont. 485, 13 Pac. 195; *Bardwell* v. *Anderson*, 13 Mont. 87, 32 Pac. 285.)

Like objections were made to the testimony of other witnesses, as to the character, extent and value of the vein as it appeared at the time the defendant's location was made. There was no

substantial ground for any of them. The inquiry was not only whether a vein was known to exist at the date of the application for the patent, but, also, whether it was such a vein as would justify a location of it and the expenditure of labor and money for the purpose of developing and utilizing its contents. To aid the latter inquiry evidence of its character, extent and the value of its contents at any time, either before or after the beginning of patent proceedings, was competent; for the vein does not fall within the exception provided for in the statute, unless it be shown to be a known vein at that time and at the same time that it contained valuable minerals in such quantities and of such value as to justify an effort to utilize it. Evidence of what it contained at the date of the location was evidence of what it contained at the time application for patent was made.

Objection was made to the introduction of the record of affidavits of different persons, showing that defendant had caused annual representation work to be done on the Ambrose claim from year to year after the location was made, the ground of objection being that the evidence was immaterial and incompetent, in that it did not appear from the affidavits that the work had been done within the limits of the areas which the defendant could lawfully claim under his location, namely, a strip fifty feet in width along the vein. Upon the statement of counsel for defendant that it would be shown by testimony, to be introduced thereafter, that this work had all been done upon the vein itself, the objection was overruled. Subsequently it was made to appear from the testimony of the witness Terrell, who had done most of the work, that all that he did was done at different points along the vein itself. By fair inference it also appeared that all of it had been done upon the vein. The specific objection did not present the question whether the evidence was wholly incompetent or immaterial for any purpose, but assumed that it was admissible for some purpose, provided the particular objection were obviated. In all cases of this kind the question of good faith upon the part of the quartz claimant is a matter for proper inquiry. The fact that subsequent to the making of:

his location he has deemed it of sufficient value to warrant the expenditure of money in order to develop it, or even to preserve the location, is indicative of his good faith. We are of the opinion that the evidence was competent as tending to show good faith. But, conceding that it was wholly immaterial and incompetent for any purpose in the case, we are unable to see how, under the issue submitted to the jury, the admission of this evidence could have prejudiced the plaintiffs' case.

One Robinson, a witness for defendant, after showing by his statements that he was a practical miner of many years' experience in the Butte district and other places, and that he was acquainted with the ground in controversy before the application for the patent was made, was asked to state the condition, extent and appearance of the vein prior to July, 1879. This he did by stating that the vein was about two and half feet in width, being well defined and traceable for some 200 feet or more. The following question was then put to him: "I will ask you to state from your experience as a miner, Mr. Robinson, whether or not in your opinion a vein of the character that you have described this vein to have been under the conditions that maintained here prior to July, 1879, would have justified a prospector or person who was in good faith seeking to develop a quartz mine in expending some time and money on the ground for the purpose of ascertaining whether or not it would develop into a paying mine?" He was allowed, over objection, to answer and state that "a man could work it. The prospects were good. The vein carries some mineral values." The objection was not that the witness had not shown himself to be competent to give his opinion as an expert, but that the evidence was incompetent and immaterial. In this contention there is no merit. Bearing in mind the fact that the evidence was introduced for the purpose of enabling the jury to determine whether the vein was such a one as would come within the exception of the statute, we cannot understand the purport of the objection. If the witness had shown himself competent to speak, certainly his opinion, based upon his experience and observation of the conditions in

the Butte district, was competent, as well as material, to aid in showing the conditions at the time the application for patent was made. Like objections were made to testimony of similar import given by other witnesses. They were properly overruled.

2. Complaint is made that the court misstated the law in several paragraphs of the charge, and erroneously refused to give one instruction requested by the plaintiffs. Apart from some verbal criticisms of portions of the charge given, the questions argued in this connection arise out of the different views entertained by counsel and the court as to the law applicable to the case as a whole. While some expressions used are inaccurate, we do not think the verbal criticisms made are of sufficient merit to deserve special notice. The real controversy is whether the theory of the court or that of counsel is correct. The opposing views are illustrated by paragraphs 7 and 8 of the charge, and the instruction requested by the plaintiffs. These are the following:

"No. 7. The court instructs the jury that a vein, as the same is understood and defined by law, is a body of mineral or mineral-bearing rock within defined boundaries in the general mass of the mountain. In this definition the elements are a body of mineral or mineral-bearing rock and the boundaries. With either of these well established, very slight evidence can be accepted as to the existence of the other. A body of mineral or mineral-bearing rock in the general mass of the mountain, so far as it may continue unbroken and without interruption, may be regarded as a lead, whatever the boundaries may be. In the existence of such a body, and to the extent of it, boundaries are implied. On the other hand, with well-defined boundaries, very slight evidence of ore within such boundaries will prove the existence of a lead. Such boundaries constitute a fissure, and, if in such fissure ore is found, although at considerable intervals, and in small quantities, it is called a vein or lode. The jury is instructed, however, that not every vein or lode within the exterior limits of a placer claim is excepted from a placer patent

unless the application is made for such vein or lode when the patent for the placer is applied for; but only such a vein or lode as comes within the definition of a known vein or lode as the same is defined in these instructions.

"No. 8. A known vein, within the meaning of the term as used in these instructions, is a vein known to exist at the time of the application which has been clearly ascertained, and is of such an extent and value as to render the land more valuable on that account and to justify its exploitation and extraction of the mineral therefrom. This does not necessarily mean that the vein must show mineral values to such extent as would make the working of the same a profitable pursuit at the place where it is exposed; nor is it necessary that the values contained shall be such as to demonstrate or prove that there exists a shoot or body of ore within the vein which it will pay to develop and extract. The phrase, 'of such value as to justify the exploitation of the vein and extraction of the mineral therefrom,' is intended to mean, and does mean, that the vein is of such a character as would justify an ordinary person who was seeking in good faith to develop a mine in developing and working upon the said vein. In considering, however, the question as to whether or not any vein is a known vein, within the meaning of the term, it is proper, and you should take into consideration the amount of ore, the facility of working and reaching it, as well as the product per ton which might or could be obtained therefrom, at the time of the application for patent."

"No. 19 (requested and refused). The jury are instructed that in the case at bar the plaintiffs are claiming under a patented placer mining claim; that the defendants are claiming by reason of their having performed certain acts prescribed by law for the making of a location of a quartz lode mining claim; that in such case, before a valid quartz location can be made, it must appear that the vein or lode upon which such location is attempted was, at the date of plaintiffs' application for patent, July 18, 1879, known to be a 'known lode' within the meaning of that term as used in United States statute, that a known lode,

within the meaning of the United States statute, is one known to exist at the time of the application for placer patent, and to contain minerals in such quantity and quality as to justify expenditures for the purpose of extracting them. It is not every crevice or outcropping on the surface which suggests the possibility of mineral that can be adjudged a known vein or lode within the meaning of the statute, but that, in addition to this fact, it must appear that such land embraces a vein known at the time of the application for patent to be sufficiently valuable to justify expenditures for extraction of ore then known to exist therein. That is to say, that one claiming land as a mining location from which to extract minerals must establish, as against a prior locator, in this case as against the plaintiffs claiming under a placer patent, that the ground now claimed as a lode location was at the date of plaintiffs' application for placer patent, July 18, 1879, valuable to operate as a mine by reason of the ores then known to exist therein, and, unless this appears, defendant will not be permitted to take from plaintiffs the ground in controversy, and the jury are instructed to find for the plaintiffs."

The criticism made of paragraph 7 is that, while it would be an accurate and appropriate definition of a vein or lode in a controversy between rival claimants for the same vein or lode on the public lands of the United States, it is erroneous and wholly inapplicable to what is designated as a "known vein or lode" within the meaning of section 2333 of the statute, *supra.*

Paragraph 8, it is contended, is erroneous, in that it tells the jury that a vein may be a "known vein," although at the date of the application for placer patent the alleged vein is not known to contain any values sufficient to justify exploitation for the extraction of mineral therefrom; whereas, the jury should have been told, as requested by plaintiffs, that a "known vein," within the meaning of the law, is a vein known at the time of the application for patent to be sufficiently valuable to justify expenditures for extraction of ores then known to exist therein. The complaint made by counsel is not justified.

The paragraph explicitly states what counsel say it does not. What is really intended, as we gather from their argument, is that the court did not embody in the paragraph the statement contained in the requested instruction, that such a vein must have sufficient value to justify working it as a mine by reason of the ores known to exist therein.

Section 2318 of the statute (U. S. Comp. Stats. 1901, p. 1423) reserves from sale, except as otherwise provided, "in all cases lands valuable for minerals." Under section 2319 (U. S. Comp. Stats. 1901, p. 1424), "all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase," etc. Section 2320 (U. S. Comp. Stats. 1901, p. 1424) declares: "Mining claims upon veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, heretofore located, shall be governed as to length along the vein or lode by the customs, regulations, and laws in force at the date of their location." The following portion of the section declares what shall be the requirements as to locations made subsequent to the passage of the Act (Act May 10, 1872, chapter 152 [17 Stat. p. 91]), of which the section is a part. Section 2333, which is a part of the same Act, declares: "Where the same person, association, or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of this chapter, including such vein or lode, upon the payment of five dollars per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof. The remainder of the placer claim, or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of two dollars and fifty cents per acre, together with all costs of proceedings; and where a vein or lode, such as is described in section twenty-three hun-

dred and twenty, is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for a vein or lode claim shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of a vein or lode in a placer claim is not known, a patent for the placer claim shall convey all valuable mineral and other deposits within the boundaries thereof.''

It will be noted that in none of these provisions did Congress undertake to define the meaning of the terms ''vein'' and ''lode,'' or to indicate the extent or value of the minerals in them necessary to bring the lands in which they are found within the terms of the reservation. The definition of these terms was left to the courts; Congress no doubt supposing that they would have assigned to them the meaning which had been given to them in the popular speech and usages of the people in the mining districts before any legislation was enacted on the subject. (*Eureka Con. Min. Co.* v. *Richmond Min. Co.*, 4 Saw. 302, Fed. Cas. No. 4548; *Moxon* v. *Wilkinson*, 2 Mont. 421; *Montana C. & C. Co.* v. *Livingston*, 21 Mont. 59, 52 Pac. 780.) So it was left to the courts to say what extent of values the particular deposit should have in order that it should come within the designation ''valuable mineral deposits,'' and the lands wherein it should be found should properly be held to fall within the reservation ''lands valuable for minerals,'' and be purchasable under the provisions of law applicable. When all these provisions are read together, however, it is apparent that the character of the vein or lode which is excepted from the placer patent, when not claimed by the applicant, is the same kind of a vein or lode, and one bearing the same character and extent of value, as that mentioned in section 2320; for the language of section 2333 characterizing it is: ''And where a vein or lode, such as is described in section twenty-three hundred and twenty, is known to exist within the boundaries of a placer claim,'' etc. Such a vein or lode is conclusively presumed to be

excepted from the patent, if not claimed by the placer owner when he applies for the patent. From this consideration alone, it would seem too clear for resort to any rule of construction, that a definition of the terms "vein" and "lode," as they are used in section 2320, must also be applied to them as used in section 2333. We assume this as evident from the reference in the latter section to the former. Having done this, it only remains to ascertain the correct definition of these synonymous terms as used in the former section, in order to determine whether the trial court's theory of the law is correct.

In *Iron Silver Min. Co.* v. *Cheesman* (C. C.), 8 Fed. 297, 2 McCrary, 191, Judge Hallett in his charge to the jury defined these terms as follows: "A 'vein' or 'lode' is a body of mineral or mineral-bearing rock within defined boundaries in the general mass of the mountain." He then proceeded to say: "In this definition the elements are the body of mineral or mineral-bearing rock and the boundaries. With either of these things well established, very slight evidence may be accepted as to the existence of the other. * * * In the existence of such body, and to the extent of it, boundaries are implied. On the other hand, with well-defined boundaries, very slight evidence of ore within such boundaries will prove the existence of a lode. Such boundaries constitute a fissure, and, if in such fissure ore is found, although at considerable intervals and in small quantities, it is called a lode or vein." The charge was examined by the United States supreme court in the same case on error, and was approved. (*Iron Silver Min. Co.* v. *Cheesman*, 116 U. S. 529, 6 Sup. Ct. 481, 29 L. Ed. 714.) It has been approved as an accurate and comprehensive definition in the following cases: *Stevens* v. *Williams*, 23 Fed. Cas. No. 13,413; s. c. 1 McCrary, 480; *Buffalo Zinc & Copper Co.* v. *Crump*, 70 Ark. 525, 91 Am. St. Rep. 87, 69 S. W. 572; *Cheesman* v. *Shreeve* (C. C.), 40 Fed. 787; *United States* v. *Iron Silver Min. Co.*, 128 U. S. 673, 9 Sup. Ct. 195, 32 L. Ed. 571; *King* v. *Amy & Silversmith Con. Min. Co.*, 9 Mont. 543, 24 Pac. 200; *Iron Silver Min. Co.* v. *Mike & Starr G. & S. Min. Co.*, 143 U. S. 394, 12 Sup.

Ct. 543, 36 L. Ed. 201. The elements of this definition are the same as those embodied in the definition formulated by Mr. Justice Field in the early case of *Eureka Min. Co.* v. *Richmond Min. Co., supra,* as follows: "We are of opinion that the term ['vein,' 'lode'], as used in the Acts of Congress, is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock. It includes   *   *   *   all deposits of mineral matter found through a mineralized zone or belt coming from the same source, impressed with the same forms, and appearing to have been created by the same processes."

While it is exceedingly difficult to formulate a definition sufficiently comprehensive to cover all sorts of deposits, as is pointed out in *Montana C. & C. Co.* v. *Livingston, supra,* for practical purposes these definitions are sufficiently comprehensive. Paragraph 7, *supra,* embodies the definition formulated by Judge Hallett, and then goes a step further to tell the jury, in substance, that, while they must take it as their guide, they must do so subject to a definition of what is meant by a "known vein or lode" elsewhere given. The court then proceeds to define this expression in paragraph 8. The correctness of the charge, then, is to be determined by an answer to the question whether the qualifications added in this paragraph are proper.

In determining contests between patentees of placer lands and quartz lode claimants, the courts have been careful to guard the rights of the former under their patents, proceeding upon the theory that the title, fully vested under the patent, may not be disturbed except upon clear and convincing evidence. The burden is cast upon the adverse claimant to show, not only that the vein or lode upon which he founds his claim falls within the recognized definitions of these terms, but also that it was known to exist as a clearly ascertained vein, and sufficient in extent to render the land more valuable because of it, and to justify its exploitation in order to extract and utilize its contents. *United States* v. *Iron & Silver Min. Co., supra,* was an action by the United States to set aside patents issued for placer

claims, which it was alleged had been obtained by fraudulent representations that the land covered by them was placer ground and contained no quartz or other rock in place bearing gold, silver, or other precious metals, whereas, in fact, the land was not placer ground, but valuable for quartz veins or lodes bearing valuable deposits. Mr. Justice Field referred to the definition of the terms "lode" and "vein" laid down by Judge Hallett, *supra,* and adopted it as correct. He then indicated the characteristics which known veins or lodes, within the meaning of the statute, *supra,* must possess, as follows: "To meet that designation the lodes or veins must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation." It thus appears clearly that, in the opinion of the court, a vein which would support a location on the public domain is, when known to exist as a clearly ascertained vein, such a vein as is excepted from the operation of the placer patent.

In *Iron Silver Min. Co.* v. *Mike & Starr G. & S. Min. Co., supra,* there was a contest between the placer patentee and the quartz lode claimant, and among other questions presented was the one now under consideration. The court again adopted the definition formulated by Judge Hallett as correct, and declared that a vein is a "known vein," within the meaning of the statute, when it possessed the characteristics indicated by the quotation from the opinion by Mr. Justice Field in *United States* v. *Iron Silver Min. Co., supra.* Touching the extent and value of the deposit, the court said: "It is, after all, a question of fact for a jury. It cannot be said as a matter of law in advance how much of gold or silver must be found in a vein before it will justify exploitation and be properly called a 'known vein.'" (See, also, *Sullivan* v. *Iron Silver Min. Co.,* 143 U. S. 431, 12 Sup. Ct. 555, 36 L. Ed. 214.)

The rule declared by these cases has never been modified or changed. Indeed, they seem to furnish the only reasonable construction of section 2333, *supra;* and, so long as the rule adopted by them stands, it must be deemed controlling. It is a

just rule; for, if the quartz claimant be required in all cases to
show that the vein must be known to contain at the time of the
application for patent ore of such extent and value that it can
be extracted with profit without previous exploitation, in ac-
cordance with the theory of counsel for plaintiffs as indicated
by the instruction requested, then it would scarcely ever be pos-
sible in localities where the tops of the veins have been leached,
to establish the existence of a known vein in the ground covered
by the placer patent. Different conditions are found in dif-
ferent localities. It is often the case that a lode or vein, well
defined on the surface, contains small values at the surface,
whereas a moderate amount of development exposes below ore
bodies of immense value. It is well known that this condition
prevails generally throughout the mining districts of Montana.
To say that such veins are not among those excepted from the
operation of the placer patent would be equivalent to declaring
the rule that the particular vein, though clearly ascertained,
must be known to contain at the surface deposits which may then
be profitably extracted, or the application for the placer patent
of itself forever thereafter excludes claim by one who knows
or discovers its value. The purpose of the statute is to require
good faith on the part of the placer claimant, so that he may
not, under the cover of a large area of land which he may ac-
quire under the name of placer, obtain title to the quartz de-
posits also, without making the proper claim for them, and the
additional payment required by law for the lands containing
them.

We think the court's interpretation of the law was correct,
as indicated by the paragraphs of the charge quoted. What-
ever may be the rule adopted to determine contests between
mining claimants and the patentees of townsite or agricultural
lands as to the burden which must be met by the former to avoid
the effect of the patent, it has and can have no application to
cases of this character. Such claims depend upon other provi-
sions of the statute particularly applicable to them, and may-

not be held to modify or change in any respect the interpretation of the statutes applicable here.

Counsel for plaintiffs cite and rely upon *Brownfield* v. *Bier,* 15 Mont. 403, 39 Pac. 461, *Casey* v. *Thieviege,* 19 Mont. 341, 61 Am. St. Rep. 511, 48 Pac. 394, and *Midgeon* v. *Montana Central Ry. Co.,* 77 Fed. 249, 23 C. C. A. 156, as conclusive of their contention. While there are some expressions used in the course of the discussion in the opinions in the last two of these cases which seem to support counsel's view, there is nothing in the conclusion announced in either of them in conflict with the rule announced by the supreme court of the United States in the cases cited. Indeed, all of them announce the conclusion stated by the court in *United States* v. *Iron Silver Min. Co., supra,* and support the theory adopted by the trial court in formulating its instructions in this case.

3. The contention that the evidence does not justify the verdict cannot be sustained. As was said in *Iron Silver Min. Co.* v. *Mike & Starr G. & S. Min. Co., supra,* whether the vein was known at the date of the application for patent by the plaintiffs as a clearly ascertained vein, and whether it contained such values as made the ground more valuable on that account and justified exploitation with a purpose to extract and utilize the values therein, were questions for the jury. There was evidence sufficient to require a submission of them to the jury, and to justify an answer of them all in the affirmative. To be sure, there was a conflict in the evidence, and in some respects it was not as strong and satisfactory in support of defendant's position as it might have been; yet, since there was a conflict, the parties were entitled to have a finding by the jury thereon, and such finding is binding upon this court.

The order is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.