## THE MT. ROSA MINING, MILLING & LAND CO. v. PALMER.

1. APPELLATE PRACTICE—FINDINGS—PRESUMPTIONS.

Where the evidence is not preserved in the bill of exceptions it must be presumed that it was sufficient to sustain the verdict of the jury and the finding of the court.

2. MINING CLAIMS—KNOWN LODE INCLUDED IN PLACER LOCATION.

A placer location and patent confers neither title nor right of possession to lodes and veins known to exist within its limits at the time patent is applied for, and a subsequent locator of such lode or vein is not a trespasser upon the rights of the placer locator.

3. MINING CLAIMS—TITLE OF LOCATOR—ACTION TO QUIET TITLE.

A locator of a lode mining claim acquires an estate and interest in real property and is treated as the owner in fee as to every one except the United States, and has such title as will support an action to quiet title under section 255 of the civil code.

4. MINING CLAIMS—KNOWN LODE WITHIN PLACER LOCATION.

Section 2333, U. S. Rev. Stats. fixing the width of a lode claim within the boundaries of a placer claim at twenty-five feet on each side of the vein applies not only when the lode is located by the placer claimant, but applies as well to others who locate a lode within the boundaries of a previously located placer.

*Appeal from the District Court of El Paso County.*

Mr. A. T. GUNNELL, Mr. WILLIAM C. ROBINSON and Mr. GEORGE L. HODGES, for appellant.

Messrs. B. F. and W. S. MONTGOMERY, Mr. BRUCE GLIDDEN and Mr. J. H. MAUPIN, for appellee.

Mr. CHARLES CAVENDER, Mr. JOHN M. MAXWELL, Mr. JOHN A. EWING and Messrs. THOMAS, BRYANT & LEE, *amici curiæ.*

MR. JUSTICE GODDARD delivered the opinion of the court.

This is an action instituted by the appellee, plaintiff below, against appellant, the Mt. Rosa Mining, Milling & Land

Company, defendant below, to quiet his title to two lode mining claims situate within the exterior boundaries of a certain tract of land conveyed to appellant by a government patent, as placer mining ground.

Upon the trial it was admitted that the lode claims were formally and regularly located as provided by law, except as to the discovery of mineral therein; that affidavits in lieu of labor, for the years subsequent to their location, were properly filed by the owners; that by proper conveyances the plaintiff became, and was, the owner of whatever title had been acquired by virtue of such locations.

It was further agreed that the placer owned by the defendant was located some time prior to the location of the lode claims; that the application for a patent was not made until after their location; that the defendant, through proper conveyances, was the owner of the placer.

The only questions of fact that remained in dispute were whether or not a vein or lode was discovered and known to exist in the Handy Andy and Newman claims, within the boundaries of the Mt. Rosa placer at the time appellant applied for patent for such placer, on August 18, 1892. The court, though sitting in the exercise of its equity jurisdiction, called a jury, to which it submitted these questions. Their answers were in the affirmative, and were adopted by the court as a part of its findings; and thereupon, and from a consideration of all the evidence introduced, the court found that the facts established were substantially these:

That the grantors of plaintiff, on March 18, and April 5, 1892, entered upon the land included within the exterior boundaries of the Mt. Rosa placer, and located respectively the Handy Andy and Newman lode mining claims, upon discoveries of mineral bearing rock in place, within the boundaries of said claims; and subsequently performed all acts necessary to complete a valid location of said claims; that by duly executed and recorded deeds of conveyance plaintiff became vested with all right, title and interest in and to the same; that on November 7, 1892, the Mt. Rosa Mining, Mill-

ing & Land Company made application, in the proper United States land office, for a patent for the Mt. Rosa placer mining claim; and on April 24, 1893, the patent therefor was issued; and it thereby became, and is still, seized of all the right, title and interest to the tract of land described therein; and found, as conclusions of law, that the Handy Andy and Newman lode mining claims respectively had been duly discovered, located and recorded, within the exterior boundaries of the tract of land described in the Mt. Rosa placer patent, before the time of said application; that the ground described in said lode mining claims was excepted out of the land described in, and conveyed by, the placer patent; that the plaintiff was, at the time of the commencement of this action, and still is, entitled to the possession of the ground described therein; and entered judgment in favor of plaintiff for the possession of the ground in dispute; and enjoining defendant from asserting any interest adverse thereto; and for costs. To reverse this judgment the company brings the case here on appeal. Error is predicated upon the refusal of the court to give certain instructions asked for by appellant, defining what constitutes a lode or vein of mineral, under the statute. We think this subject was properly covered by the instructions given, and that therein the court gave the generally accepted definition; and also stated the necessary conditions that would constitute it a known lode, under the United States Revised Statutes, section 2333. The evidence not being preserved in the bill of exceptions, we must presume it was sufficient to sustain the answers of the jury and findings of the court, that lodes were discovered and known to exist within these respective locations, prior to the application for patent. But counsel for appellant contend that, notwithstanding this, appellee cannot maintain this action, for two reasons: First, because appellant, having made a valid location of the ground as a placer claim, it was entitled to the exclusive possession thereof, and the entry of plaintiff's grantors thereon was wrongful, and no possessory right to the lodes was acquired thereby. Second, that if, notwithstanding such wrongful

entry, valid locations of the lodes were made, the title thereby acquired is not sufficient to support an action to quiet title. It is undoubtedly true that when a locator perfects a valid location to a lode or placer mining claim, he is entitled to the exclusive possession and enjoyment of the lands located, for all purposes granted by the act of congress. In the case of a lode location, the land located is segregated from the public mineral domain of the government, and the grant confers upon the locator the exclusive right of possession and enjoyment of the surface, and any lode, the top or apex of which is within its surface boundaries (U. S. Rev. Stats. sec. 2322); and so long as he complies with the requirements of the act, he can protect his possession of the surface of his claim, as well as such lodes, from invasion, by any subsequent lode or placer locator. *Manuel v. Wulff*, 152 U. S. 505; *Armstrong v. Lower*, 6 Colo. 393; *McFeters v. Pierson*, 15 Colo. 201; *Seymour v. Fisher*, 16 Colo. 188; *Belk v. Meagher*, 104 U. S. 279; *Gwillim v. Donellan*, 115 U. S. 45.

On the other hand, those provisions of the statute that give the locator of a placer the right to locate and patent all other forms of mineral deposit included within the surface boundaries of his claim, expressly excepts therefrom veins of quartz or other rock in place, known to exist within its limits. United States Rev. Stats. secs. 2329, 2333. Such lodes, therefore, are not the subject of a placer grant, and a placer location does not operate to confer the title, or possession thereof, upon the placer claimant, or withdraw them from subsequent location by others. In other words, *the placer location gives a qualified possession of the ground located*, that is to say, it confers upon the owner the exclusive right of possession of the surface area for all purposes incident to the use and operation of the same as a placer mining claim, and all unknown lodes or veins, but does not give right of possession to known lodes or veins within its limits. The right to the possession of such lodes or veins can be acquired only by locating them as lode claims. 1 Lindley on Mines, § 413; *Aurora Lode v. Bulger Hill & Nugget Gulch Placer*, 23 Land

Dec. Int. Dept. 95; *Reynolds v. ʰIron S. M. Co.*, 116 U. S. 687.

It has been uniformly held that a patent for a placer claim does not convey title nor right of possession to the patentee to any lodes known to exist therein at the date of application; that if he desires to obtain such title and possession, he must comply with the provision of section 2333, and patent them as lode claims. In *Reynolds v. Iron S. M. Co., supra*, Justice Miller, who delivered the opinion of the court, speaking upon this subject, said:

" We are of opinion that congress meant that lodes and veins known to exist when the patent was asked for should be excluded from the grant as much as if they were described in clear terms. It was not intended to remit the question of their title to be raised by some one who had or might get a better title, but to assert that no title passed by the patent in such case from the United States. It remains in the United States at the time of the issuing of the patent, and in such case it does not pass to the patentee. . He takes his surface land and his placer mine, and such lodes or veins of mineral matter within it as were unknown, but to such as *were known* to exist he gets by that patent no right whatever." ·

Since a patent conveys to the placer locator no other or different rights than those acquired under the location, it inevitably follows from the doctrine thus announced, that he has no possession, and acquires no right to any lodes known to exist within his claim, by virtue of his placer appropriation.

In *Aurora Lode v. Bulger Hill & Nugget Gulch Placer, supra*, Secretary Smith, in discussing the rights acquired by the placer locator, said:

" Such a location, in and of itself, does not establish any right in the claimant under it to the superficial area within its boundaries except as a placer claim or mine. Of its own force, it cannot operate to give title to or property rights in any veins or lodes within its boundaries. True, a placer mining claim becomes property *as such* by discovery and location, the same as a vein or lode claim, but it cannot and

does not of itself in any sense give title to or property rights in veins or lodes; nor can it, in my judgment, operate to preclude a subsequent lawful discovery and location of veins or lodes within its boundaries."

And Mr. Lindley, in his admirable work on mines, after an elaborate and thorough discussion of the question, deduces the following conclusions : " (1) A perfected placer location does not confer the right to the possession of veins, or lodes, which may be found to exist within the placer limits at any time prior to filing an application for a placer patent; (2) such lodes may be appropriated (a) by the placer claimant, or (b) by others, provided the appropriation is effected by peaceable methods and in good faith."

While we recognize to its full extent the rule that precludes the initiation of a right through a trespass upon the lawful possession of another, we think, under the established facts in this case, appellant is not in a position to invoke its protection. The lodes in question were known to exist prior to the application for patent; and appellant, not having taken the necessary steps to obtain possession of them, they were open to location by others at the time they were located by the grantors of appellee. In making the locations, no right of appellant was invaded, and their validity, therefore, is in no way affected by the fact that they were made within the surface boundaries of a prior placer location.

In support of the second proposition it is urged by counsel for appellant, that the mere possessory title to mining claims is not sufficient to support the action provided for in section 255 of the civil code. This section enacts that :

" An action may be brought by any person in possession, by himself or his tenant, of real property, against any person who claims an estate therein adverse to him, for the purpose of determining such adverse claim, estate or interest."

The estate acquired by the locator of a mining claim is an interest in real property, and although the paramount title remains in the government, the courts have universally recognized such interest as a freehold; and in all controversies

arising between the locator and other persons as to any right or claim thereto, he is treated as the owner in fee. *Merced M. Co. v. Fremont*, 7 Cal. 317; *Hughes v. Devlin*, 23 Cal. 502; *Merritt v. Judd*, 14 Cal. 60; *Roseville Alta M. Co. v. Ia. Gulch M. Co.*, 15 Colo. 29; *Forbes v. Gracey*, 94 U. S. 762.

As was said in *Hughes v. Devlin*, *supra*, "Although the ultimate title in fee in our public mineral lands is vested in the United States, yet as between individuals, all transactions and all rights, interests, and estates in the mines are treated as being an estate in fee, and as a distinct and vested right of property in the claimant or claimants thereof, founded upon their possession or appropriation of the land containing the mine. They are treated, as between themselves and all persons but the United States, as the owners of the land and the mines therein."

Such being the character of the locator's title, it is obvious that the foregoing provisions of the code are as applicable to mining claims as to any other real property; and his right to avail himself of the remedy therein provided is too clear to admit of dispute. *Dahl v. Raunheim*, 132 U. S. 260; *Perego v. Dodge*, 163 U. S. 160; *Noyes v. Mantle*, 127 U. S. 348; *Gillis v. Downey*, 29 Cir. Ct. App. 286.

Another and more serious question is presented, and that is as to the amount of surface ground appellee is entitled to if any, under and by virtue of his lode locations. The court below awarded him the full amount claimed, to wit, 300 by 1,500 feet in each of the claims. It is insisted by counsel for appellant that he is entitled to only the mineral lodes, and not to any of the surface of the placer ground.

This precise question has never, to our knowledge, been discussed or determined by a court of final resort. It has, however, been passed upon by the land department, but its rulings are not uniform. In the case of the *Shonbar Lode*, 1 L. D. Int. Dept. 551; s. c. 3 L. D. Int. Dept. 388, Secretary Teller ruled that the lode claimant having failed to adverse the placer application for patent, he was restricted to his lode and twenty-five feet of surface on each side thereof.

Subsequently, and after the decision in the case of *Noyes v. Mantle*, 127 U. S. 348, Assistant Secretary Chandler held in the case of *Pike's Peak Lode*, 10 L. D. Int. Dept. 200, that the limitation of the width of a lode claim in section 2333 was only applicable where the placer claimant sought to patent the lode, and had no application to a lode claim perfected by another; that in the latter case the lode claim in its full extent should be excepted from the placer patent. It does not appear from the statement of this case whether the lode claim was located prior to the placer or not; but we infer, from the fact that the secretary quoted from, and relied upon, the decision in the case of *Noyes v. Mantle, supra*, as supporting this conclusion, that the lode claim was the prior location. While in the case of *Aurora Lode v. Bulger Hill & Nugget Gulch Placer, supra*, Secretary Smith held that the lode location did not carry with it any more surface ground than was necessary for the use and enjoyment of the lode. But this conclusion seems to have been influenced largely, if not altogether controlled, by the peculiar conditions of that particular claim, and the fact that the placer claimant had obtained judgment in an adverse proceeding theretofore instituted against an application by the lode claimant for a patent.

The question was also involved upon the trial of the case of *Campbell v. Iron S. M. Co.* in the United States circuit court for this district, Judge Riner presiding. He entertained the view, and instructed the jury to the effect that a lode claimant, in case of a recovery, was entitled to no more than the vein or lode and fifty feet of ground, extending 1,500 feet in length.

We think this instruction correctly defines the amount of surface ground to which a lode located within the boundaries of a placer is entitled, under the provisions of section 2333. As was said in *Reynolds v. Iron S. M. Co., supra*, " this section made provision for three distinct classes of cases: (1) when the applicant for a placer patent is at the time in possession of a vein or lode included within the boundaries of his placer claim, he shall state that fact; and on payment

of the sum required for a vein claim and twenty-five feet on each side of it, at $5.00 per acre, and $2.50 for the remainder of the placer claim, his patent shall cover both; (2) it enacted that where no such vein or lode is known to exist at the time the patent is applied for, the patent for a placer claim shall carry all valuable mineral and other deposits which may be found within the boundaries thereof; (3) but in case where the applicant for the placer is not in possession of such lode or vein within the boundaries of his claim, but such vein is *known to exist,* and it is not referred to or mentioned in the claim or patent, then the *application shall be construed as a conclusive declaration that the claimant of the placer mine has no right to the possession of the vein or lode claim.*"

We think it is manifest that the lode or vein referred to in the first and third provisions is the same thing; and that whatever a placer claimant would acquire by availing himself of the privilege accorded him by the first provision of the section, is reserved by virtue of the third provision; in other words, that the same extent of surface ground that is incident to such lode or vein, if located and patented by the placer claimant, is reserved from the placer patent in case of his failure to claim and patent the same. If he elects to patent the lode he is required to take twenty-five feet on each side of the center of the vein and pay therefor at the rate of $5.00 per acre. This is a privilege accorded to him, which he may avail himself of or not, as he sees fit. If he elects to waive this privilege, he may do so in one of two ways: either by expressly excepting the lode from his placer location and application for patent, or remain silent in regard to it. If silent, then by implication he declares that he makes no claim to such lode; and by such silence is bound to the same extent, and in the same manner, but no further than he would have been by an express declaration. By electing to make no claim to a known lode, or express declaration in regard to it, he must be understood as claiming, for placer purposes, the greatest possible area within the boundaries of his placer claim, and should be held to have relinquished only that which he might

have taken, which is the lode, with the amount of surface ground provided. Why should there be any difference between the rights of claimants of known lodes within the boundaries of a placer? We know of none. The object of excepting known lodes from placer locations was to prevent titles to such lodes being obtained under the guise of a placer, at the same time, in order to protect claimants to each character of mineral locations to the greatest extent, and preserve to each that which was most valuable for particular purposes in connection with each class of claims. The lode, for convenient working, could not be limited to less than twenty-five feet on each side of the center of the vein; and the placer, which would be valueless without such surface rights, is permitted to take title to the remaining area accordingly. Those who controvert this view base their contention upon the provisions of section 2320, which it is said governs the length and width of all lode claims, whether made within the boundaries of a placer claim or not.

An act on a particular subject must be construed as a whole. Section 2320 refers to the location of lodes not conflicting with any other class of mineral locations, while by section 2333 special conditions with reference to conflicts between the two classes of mineral claims are specially provided for; and to that extent construing the act as a whole is a limitation or qualification of the provisions of section 2320, which relates, as stated, to the width of lode claims generally, and regulates the width of lode claims when made upon lodes within the boundaries of a placer, whether such lodes are located by the owner of the placer, or strangers to that title. By this construction, full force and effect is given to both of these sections, and the purpose of the statute is carried out. The government receives for its mineral lands the price fixed for lodes and placers respectively, and the superior right to the surface area of the placer claimant, acquired by his prior location or patent, is protected. It is the conclusion of a majority of the court that the limitation of the width of a lode claim in section 2333 is not only applicable to the placer

claimant, but applies as well to others who locate a lode within the boundaries of his previously located placer.

Chief Justice Campbell declines to express an opinion upon this question because, in his judgment, the stipulation entered into by counsel eliminates it from the case.

It follows that the court below erred in adjudging to appellee surface ground in excess of twenty-five feet on each side of the lodes in question. For this reason the judgment is reversed, and the case remanded, with directions to enter judgment in accordance with the views we have expressed.

*Reversed.*