[Sac. No. 1404.   Department Two.—August 27, 1906.]

## T. W. MUTCHMOR, Appellant, v. J. D. McCARTY, Respondent.

MINING CLAIMS—LOCATION OF QUARTZ CLAIM—INSUFFICIENT RECORD OF NOTICE.—The record of a notice of location of a quartz-mining claim, which is required to be recorded, is invalid under section 2324 of the Revised Statutes of the United States, where it contains no description of the claim by reference to any natural object or permanent monument by which it might be identified.

ID.—ACTION TO QUIET TITLE—EVIDENCE—EFFECT OF RECORD OF NOTICE. —In an action to quiet title to a quartz claim, as against the owners of a placer patent, under a prior location, the record of the notice of location of the quartz claim, if it be assumed to be valid, can prove nothing beyond the fact of its record, and is not evidence that it was posted on the ground, or that the Revised Statutes of the United States were complied with by the plaintiff in making the location or in work on the claim.

ID.—INSUFFICIENT EVIDENCE OF COMPLIANCE WITH LAW BY LOCATOR— SUPPORT OF FINDINGS AND JUDGMENT.—In such action, where there was no satisfactory evidence of compliance with the law by the locator, and the evidence tended to show that the seam of quartz was small, and carried a very small percentage of gold, and there was no evidence that in any year one hundred dollars' worth of work was done upon it by the locator, or that any work was done thereupon for eight years prior to the commencement of the action, or that plaintiff was in actual possession of the claim when the suit

was brought, the evidence is insufficient to sustain the action, and findings and judgment for the defendant will not be disturbed upon appeal.

Id.—Placer Patent—Known Veins—Meaning of Law.—Although a placer patent can carry no veins of value known to exist, yet a quartz claim which contains so small a percentage of mineral as to be of no value for mining purposes is not a known vein within the meaning of the law, and the placer patent carries it.

Id.—Question of Fact.—The question whether a known vein within the limits of the placer patent is of any practical value is always a question of fact for the jury, or for the court in the absence of a jury.

Id.—Location after Application for Placer Patent—Support of Adverse Finding.—Where plaintiff claimed under location of veins made after the application for the placer patent, and failed to prove that any of the veins claimed by him could ever be expected to pay the cost of extracting the same, and there was a preponderance of evidence that at the date of such application they were generally regarded as valueless, and have since proven to be so, the finding against plaintiff's claim and in favor of the defendant is supported by the evidence.

Id.—Cross-Examination of Defendant—Discretion—Immaterial Knowledge of Veins.—It was discretionary for the court to exclude questions asked by plaintiff of the defendant on cross-examination which were not proper cross-examination, but which practically sought to make defendant plaintiff's own witness to prove defendant's previous knowledge of veins, which was immaterial, where it appears that defendant was merely a grantee, and the only proper question of knowledge was that of his grantor or of miners generally, and where it had already been shown that the veins were of no value, and not within the meaning of the law.

APPEAL from a judgment of the Superior Court of Calaveras County. A. I. McSorley, Judge.

The facts are stated in the opinion of the court.

W. J. Donovan, for Appellant.

Solinsky & Wehe, for Respondent.

BEATTY, C. J.—This is an action to quiet plaintiff's alleged title to nine separate quartz-mining claims or lode locations, described by their respective names and by reference to the notices of location recorded in the office of the recorder of Calaveras County. The complaint contains the

allegations usual in such cases. The defendant by his answer denies that the plaintiff is or ever was owner, in possession, or entitled to the possession, of any of said claims, or of any interest therein. He admits that he claims an interest and estate in all the real property described in the complaint, but denies that his claim is without right. He alleges that for more than ten years last past he and his grantors have been the owners, and in the actual possession of, two placer-mining claims held under patent from the United States,—the Carson Hill, containing 146.50 acres, patented on the 18th of October, 1894, and the Blue Mountain, containing 151.26 acres, patented February 1, 1898, and also a certain quartz-mining claim. He further alleges that for more than twenty years he and his grantors have been the owners and in the actual possession of 480 acres of agricultural land, contiguous to the Carson Hill and Blue Mountain placer claims, which is also held under patents issued to his grantors by the United States. He alleges that he is informed and believes that the real property described in the complaint conflicts with said placer-mining claims and agricultural patents.

The action was commenced in December, 1902, and was tried by the court without a jury in November, 1903. The court found that the plaintiff was not, and had never been, the owner, or entitled to the possession, of any part of the property described in his complaint, and that the defendant was the owner and entitled to the possession of all the property described in his answer. Judgment was entered accordingly in favor of the defendant for his costs. The appeal of plaintiff is from the judgment and from an order denying a new trial.

Aside from one specification of error in the ruling of the court upon an objection to a question asked defendant on his cross-examination, the only point urged by appellant in support of his appeal is that the findings are contrary to the evidence in this, that the evidence showed a valid location of one of his claims (the Emerald) prior to any application for a patent for either of defendant's placer claims, and because all of his other claims, though located subsequently to the applications for the placer patents, were of mineral veins known to exist by the placer claimants prior to the date of their said applications, but not mentioned therein or in the

patents, and which therefore remained open to appropriation by any qualified locator.

This question of the right to locate a lode claim within the surface lines of a patented placer claim has been very fully argued by counsel for the respective parties, but it is extremely doubtful whether, in view of the evidence contained in the record, a decision upon the point is necessary to a final disposition of the case. For it does not appear that the first finding of the court to the effect that the plaintiff was not the owner of any interest in any of the claims described in his complaint was based upon the view that they were invalid only because the attempted locations were within the boundaries of the placer patents, and upon veins the existence of which was unknown at the time the patents were applied for. It may be that the court deemed the evidence offered by plaintiff insufficient to establish the validity of any of his alleged claims, irrespective of the objections based upon their conflict with the placer patents. As to the Emerald claim, the alleged location of which antedated the applications for patents, this must have been the ground of the decision, as it may have been with respect to the others; and therefore we have first to consider whether we should be warranted in holding that the evidence was such as to require a finding by the trial judge that the Emerald or any of the other alleged claims was valid in itself as a location and whether the plaintiff made satisfactory proof that he was, when he commenced this action, even in the peaceable possession of any of the ground in controversy. It appears from the evidence, that the Carson Hill and Blue Mountain placer claims are situated in what is known as the Madame Felix Mining District in Calaveras County, and not far from Copperopolis, where active mining has been carried on for many years; that within the limits and in the neighborhood of those claims, are numerous small veins or seams of quartz carrying an extremely small percentage of gold where not entirely barren. These little veins crop out at a number of places, and their existence has long been generally known. It was shown that as long ago as 1879 there were old prospecting shafts on some of these veins, which had remained untouched from that date until the date of the trial, from which it may be inferred that various lode claims had been located, prospected, and abandoned within

and near these placer claims prior to the attempted location
of the Emerald in June, 1890. A notice of this claim was
recorded on the 18th of that month by one Kennedy in pur-
suance of a special act of the legislature applicable to Cal-
averas County, requiring all notices of mining locations to be
recorded in the county recorder's office. (Stats. 1875-1876,
p. 853.) But this notice was invalid under the act of Con-
gress (Rev. Stats., sec. 2324, [U. S. Comp. Stats. 1901, p.
1426]) for the reason that it contained no description of
the claim by reference to any natural object or permanent
monument by which it might be identified. And besides, if
it had contained every essential requisite of a location notice,
the copy of the record would have proved nothing except the
bare fact that such a notice had been recorded. It would not
have proved that it was posted on the claim, or that the loca-
tion was so marked on the ground that its boundaries could
be readily traced, or that they included the apex of a lode
or any valuable mineral deposit in place, or that the neces-
sary work had been done to keep the claim good. Every one
of these things, with the possible exception of the posting
of the notice, was essential to the validity of the claim, but
it is difficult to find in the record any satisfactory evidence
upon a single point. Kennedy was himself a witness, but he
only testified that he had prospected "all these claims and
found gold-bearing quartz," and that when he was working
on the Emerald prior to the application for the placer patents
(October 22, 1892) the defendant would come to his claim to
inqure as to his prospects and get him to pan out some dirt,
and when he did so, "allowed he had as good a prospect as
was on the hill." This is in substance the whole of his
testimony as to his own claim. One of the other witnesses,
Womble, testified generally that all of the claims in con-
troversy that had been located prior to 1894 (which would
include the Emerald) were so marked by mounds that he
and a surveyor had no difficulty in finding the corners of
the claims. He also testified that a man named Watson
worked on the Emerald in 1893 and that Kennedy sunk a shaft
on it in 1894. This is all the testimony I can find in the
record bearing on the validity of the Emerald claim, and it
is clearly insufficient to show that it was of any validity
whatever at the commencement of this action. Aside from

other objections, there is no evidence that one hundred dollars' worth of work was done on the claim in any year after its attempted location, and there is no evidence that any work has ever been done on it since the year 1894, or that either Kennedy or the plaintiff was in actual possession of the claim or of any part of it when this action was commenced.

All the other claims of plaintiff are of a date subsequent to the 22d of October, 1892, when the placer patents were applied for. The notices were recorded and purport to have been posted as follows:—

Santa Cruz, in July, 1893.

Buena Vista, in October, 1893.

Democrat, in October, 1894.

Dandy, in January, 1897.

Cape Horn, in January, 1899.

Big Bonanza, in January, 1900.

Dead Man's Spring, in January, 1900.

Duplex, in January, 1900.

Several of these claims are relocations of old and abandoned claims.

The Democrat was originally the Dead Cow, and by that name was prospected and abandoned (apparently) by the defendant prior to October, 1892. The Dandy was formerly the Bald Eagle. The Cape Horn was another of the defendant's old and abandoned locations. The Duplex was formerly the Opranso.

There is no evidence of sufficient work to keep good a single one of these claims, and no evidence of actual possession of any part of any of them by plaintiff or a cotenant at the commencement of this action, and as to those located subsequent to 1894 there is no evidence of a proper marking of the locations by visible monuments on the ground. There is no evidence of the existence within the described boundaries of any of them of a vein or deposit of ore of any practical value. Kennedy, it is true, testifies that he found gold-bearing quartz in all of them, but this would be true, although none of the quartz carried gold enough to pay the cost of extraction or the cost of reduction. On the other hand, a witness for defendant, E. Boggs, a miner and practical assayer, testifies that in 1888 or 1889 he spent ten days prospecting in the neighborhood of the claim then owned by the defendant,

and called the Dead Cow, and could find no one that would assay a dollar a ton. The best came from the Dead Cow and assayed only eighty cents.

From the positive testimony of this witness, from the silence of plaintiff's witnesses as to the quality of the ore found in the small veins of quartz appearing within the limits of the placer patents, from the failure to prove assessment-work on any of plaintiff's claims, and from the general agreement of all the testimony in the case that although the ground covered by these claims lies within a short distance from a busy mining camp, and has been prospected for more than thirty years, during which time many claims have been located and abandoned after the usual tests by the sinking of shafts, etc., the court was entirely justified in concluding, if it did so conclude, that there was no vein or deposit of ore within any one of the claims described in the complaint of sufficient value or promise to justify its location as a lode claim, and further to conclude that the failure to prove that the work required by the act of Congress had been done on the claims was due to the fact that such work had not been done and that the claims, if ever valid, had been abandoned before the action was commenced. If the finding of the court against plaintiff's claim of ownership had no other support, it would be presumed that it was based upon this view, and we should be compelled to sustain it for the reasons stated. And this finding fully supports the judgment of dismissal, and is unaffected by the ruling of the court restricting the cross-examination of the defendant above referred to.

But if it were conceded that as to one or more of the eight claims of plaintiff attempted to be located subsequent to the applications for the placer patents, there was satisfactory and uncontradicted evidence of full compliance with the federal statutes and local regulations governing the location and working of mining claims, this finding of the court would, even in that case, have abundant evidence to support it. The issuance by the government of its patents for the Carson Hill and Blue Mountain claims to the grantors of defendant is conclusive evidence in this proceeding that the land patented is placer ground, and that defendant from the date of the applications for patents has been the owner of everything within its surface boundaries excepting only such veins of ore or

CXLIX Cal.—39

mineral deposits in place as were known to exist at the date of such applications, subject of course to the right of owners of exterior lode claims to follow their veins on the dip under the surface. As to the agricultural lands described in the answer and which are held under homestead patents defendant is the absolute owner under a title long antedating the location of any of plaintiff's claims, and as far as they may conflict with those lands there can be, and in fact is, no controversy. The sole question therefor with respect to those claims of plaintiff which are here assumed to have been regularly located and perfected subsequent to the 22d of October, 1892, is whether there was uncontradicted evidence from which the court should have found that they cover veins or mineral deposits in place which within the meaning of section 2333 of the Revised Statutes [U.. S. Comp. Stats. 1901, p. 1453] were known to exist at that date.

The Revised Statutes of the United States (sec. 2019 et seq. [U. S. Comp. Stats. 1901, p. 1424]) provide for the disposition alike of lodes or veins, and of placer deposits. The price of lode claims is five dollars per acre of the surface while that of placer claims is only two dollars and fifty cents. It is therefore a fraud for a person cognizant of the existence of a vein of apparent value to attempt to acquire the title by means of a placer location and patent. It is accordingly provided by section 2333 that "Where the same person, association, or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of this chapter, including such vein or lode, upon the payment of five dollars per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof. The remainder of the placer claim, or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of two dollars and fifty cents per acre, together with all costs of proceedings; and where a vein or lode, such as is described in section twenty-three hundred and twenty, is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim shall be construed as a con-

clusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of a vein or lode in a placer claim is not known a patent for the placer claim shall convey all the valuable mineral and other deposits within the boundaries thereof.'' The patents for the Carson Hill and Blue Mountain claims contain express reservations in conformity with these provisions, as follows:—

"1st. That the grant hereby made is restricted in its exterior limits to the boundaries of the said mining premises, and to any veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, which may have been discovered within said limits subsequent to and which were not known to exist on the 22d day of October, A. D. one thousand eight hundred and ninety-two.

"2d. That should any vein or lode of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits be claimed or known to exist within the above described premises at said last named date, the same is expressly excepted and excluded from these presents.''

There are other reservations in the patents but they are immaterial to the present discussion.

The decisions of the supreme court of the United States and of other courts of high authority, both state and federal, have settled the construction of this provision of the Revised Statutes and of these reservations in placer patents as applied to a great variety of cases, and especially as they apply to this case. A vein known to exist within the boundaries of a placer claim at the date of the application for patent, and not included in the application, may be located by an adverse claimant after the issuance of the patent, and a vein is known to exist within the meaning of the statute,—1. When it is known to the placer claimant; 2. When its existence is generally known; 3. When any examination of the ground sufficient to enable the placer claimant to make oath that it is subject to location as such would necessarily disclose the existence of the vein. (*Iron S. M. Co.* v. *Mike & Star Co.,* 143 U. S. 403, [12 Sup. St. 453]; Lindley on Mines, sec. 781, and cases cited.) In this case it does appear that the Emerald, the Dead Cow, the Cape Horn, and perhaps other

veins were known to the defendant several years before his grantors applied for the placer patents; it is reasonably certain that their existence was, prior to that date, generally known, and known to defendant's grantors. On this point we think the plaintiff's case was clearly proved, and without substantial conflict in the testimony. But upon another point essential to his case there was a failure of proof. A quartz vein which contains so small a percentage of gold, silver, etc., as to be of no value for mining purposes is not a known vein within the meaning of the law, and whether it is of any practical value is always a question for the jury (or in the absence of a jury, for the court). (*Iron S. M. Co.* v. *Mike & Star Co.*, 143 U. S. 403, [12 Sup. Ct. 543]; *Migeon* v. *Montana Cent. Ry. Co.*, 77 Fed. 249, [23 C. C. A. 156], and cases therein cited.)

In this case there was not only a failure on the part of plaintiff to prove that any of the veins claimed by him could ever be expected to pay the cost of extracting the ore, but there was on the contrary a preponderance of evidence that at the date of the applications for the placer patents they were generally regarded as valueless and have since proven to be so. Upon this ground therefore, if upon no other, the finding against plaintiff's claim of ownership is clearly supported by the evidence.

The questions asked by plaintiff's attorney on cross-examination of defendant, to which objections were sustained by the court, were clearly not proper as cross-examination, and the ruling of the court was correct. The real complaint of the plaintiff respecting this matter seems to be that he was not allowed to make the defendant his own witness. This the court had the right in its discretion to allow or to refuse, and we think its discretion was not abused in refusing to hear further evidence on the point to which the questions were directed. They related exclusively to defendant's knowledge of the existence of quartz veins within the boundaries of the placer claims prior to the applications for patents. The fact had already been satisfactorily shown, but was immaterial for two reasons: 1. Because it was not his knowledge, but that of his grantors, and of the miners generally, that was important; and 2. Because it had been shown that the veins were of no value, and not within the meaning of the law.

The judgment and order of the superior court are affirmed.

McFarland, J., and Henshaw, J., concurred.