## PUETT v. HARVEY

No. 2764

June 20, 1928.                      268 P. 41

*Powell & Brown,* for Appellants:

*Cooke & Stoddard,* for Respondent:

## OPINION

By the Court, DUCKER, J.:

This is an action to quiet title to certain mining ground situated in Rochester mining district in Pershing County, Nevada. The complaint alleges that plaintiff located two lode mining claims known as and named South Extension No. 1 and South Extension No. 6, the former on the 27th day of November, 1915, and the latter on the 5th day of July, 1924, and subsequently

fully performed all acts necessary to complete valid locations of said claims.

In their answer defendants deny the validity of the lode mining locations alleged in the complaint. It is affirmatively alleged in the answer that on or about the 1st day of November, 1926, the defendant George Dull, after ascertaining that there had been no annual assessment work performed for the year ending July 1, 1926, upon the part of the public domain formerly embraced within the Independence lode mine, in good faith and with intent to locate the same, commenced to work and prospect upon that part of the public domain formerly embraced within the said Independence lode mine, and found valuable mineral in place thereon; that on or about the said 1st day of November, 1926, the defendant Dull prepared and posted upon that part of the public domain formerly embraced within the said Independence lode mine a notice of location thereof as a lode mining claim; that the defendant Dull, along with the defendants Harvey and Lively, continued in good faith and continuously to work and prospect said ground and with reasonable diligence to perfect a location of the same under the mining laws of the United States and of the State of Nevada, in the name and for the use and benefit of the defendant Dull, but, before any mining locations of such ground had been perfected and before the expiration of the time allowed by law within which to perform the various acts necessary to perfect such location, and while the defendants were actually and in good faith working upon, prospecting and mining said ground, the same being then and there a part of the public domain and open for location under the mining laws of the United States and the State of Nevada, the plaintiff, without notice to defendants, wrongfully procured from this court, and caused to be served upon said defendants, an order restraining and preventing them from "entering upon, occupying, exercising the rights of ownership, perfecting said location, and working and developing the same, and from mining, producing and hauling valuable mineral bearing gravel and concentrates therefrom, or from in any manner interfering

with the plaintiff's use, possession and control of the lands occupied by them, to their great and irreparable damage, and unless said plaintiff is enjoined and restrained by the judgment and order of this court, said damage will continue indefinitely."

It appears from Exhibit B, made a part of the answer, that the mining location claimed is unnamed; that it adjoins the Bonanza claim on the northeast, and embraces the old Mary McKinney mine.

The reply denies the validity of the mining claims alleged in the answer. The case was tried before the court and substantially the following judgment was rendered: "It is ordered, adjudged and decreed that the plaintiff, subject to his future compliance with the mining laws of the United States and the State of Nevada regarding the performance of annual labor on and for the benefit of mining claims, is the owner and entitled to the possession of that portion of the South Extension No. 1 lode mining claim which is outside of any ground formerly embraced within the surface boundaries of the old Grand Placer placer mining claim, and, also, to so much of said South Extension No. 1 lode mining claim located over the surface of said Grand Placer placer claim as is included within the boundaries formed by end lines of said Grand Placer claim, and parallel lines drawn through said end lines and 25 feet distant from each side of the discovery monument of plaintiff's South Extension No. 1 lode mining claim, including both lode and placer rights therein, thereon, or thereto."

"That defendant, George Dull, subject to his completing and perfecting his location of his claim located by him within the surface boundaries of the old Mary McKinney mining claim on the 1st day of November, 1926, and to his further compliance with the mining laws of the United States and the State of Nevada, is the owner and is entitled to the possession of the whole of the surface of the ground within the boundaries of the said unnamed mining location, so made by him, and of the whole of the mining rights therein, or thereto, save and except as to the surface of said unnamed

claim which is in conflict with said South Extension No. 1 lode mining claim, as the said last named claim is defined and determined herein, and the mining rights within or appurtenant to said area so in conflict, and save and except as to such extralateral rights in said unnamed mining claim, if any there be, vested in plaintiff by reason of his ownership of said South Extension No. 1 lode mining claim, the prior claim in time of location and superior title."

Defendants have appealed from that portion of the judgment favorable to plaintiff. They insist that it is not supported by the findings. The findings in support of this part of the judgment are as follows: "That, on or about the 27th day of November, 1915, the plaintiff posted a notice of location of a lode mining claim in a monument constructed according to law upon a valid and existing placer mining claim known as and called the Grand Placer, located in Rochester mining district, Pershing County, Nevada, and bounded on the west by the Bonanza Placer mining claim and on the east by the Mary McKinney mine, in which notice of location the plaintiff set out the name of the locator, the name of the claim, the location of the claim, the number of feet claimed along the course of the lode, to wit, 750 feet in a northerly direction and 750 feet in a southerly direction from the discovery monument, together with 300 feet on each side of the middle of the vein, and all matters required by law to be stated therein, and thereafter, and within twenty days monumented said claim in accordance with law, and within ninety days after posting said notice of location, performed location or discovery work for said claim at a point 40 feet west of the discovery monument, consisting of a shaft four feet wide, six feet long and ten feet deep, but not exposing any lode, ledge, vein or mineral deposit in place, but did make a discovery of mineral bearing rock or ledge in place within the surface boundaries of the old Grand Placer, which said discovery was made by plaintiff prior to July 1, 1926. That said locator did not, within the time provided by law, or at all, file or record either in

the office of the district mining recorder of Rochester mining district or in the office of the county recorder of Humboldt County, Nevada, in which said county said mining claim was then located, any certificate of location thereof, but that said locator did on the 9th day of September, 1918, cause to be recorded in the office of the county recorder of said Humboldt County, a notice of location of said claim."

"That for the assessment year ending July 1, 1926, the plaintiff did, and caused to be done, more than $100 worth of labor, as assessment work for said South Extension No. 1 lode mining claim, and that at the time of the attempted location of a portion of the ground within said claim by defendants on November 1, 1926, that portion of said claim which plaintiff could legally locate on November 27, 1915, was not subject to relocation by defendants or any one else."

■ It is insisted by defendants that the judgment cannot be sustained because there is no finding of a lode deposit of mineral in place on the South Extension No. 1 lode mining claim, and further insisted that if it can be said that the court made a finding of a discovery within the limits of the claim as defined by the court, it is not of such a discovery as is required by law where a lode claim is located over a placer claim. The answer to these contentions is found in section 403 of the civil practice act (Rev. Laws, sec. 5345) as amended by Stats. 1919, p. 319. The statute reads:

"In cases tried by the court, without a jury, no judgment shall be reversed for want of a finding, or for a defective finding of the facts, unless exceptions be made in the court below to the finding or to the want of a finding after application to the court for additions to or modification of the findings with notice given to the adverse party as prescribed in section 285 of this act. Upon failure of the court on such application to remedy the alleged error, the party moving shall be entitled to his exceptions."

It does not appear from the record that defendants made any application to the court for a finding on the

issue of the location or discovery work on the South Extension No. 1, and counsel concedes that none was made. Consequently a finding in this regard sufficient to support the judgment must be implied. Dutertre v. Shallenberger, 21 Nev. 507; Edwards v. Jones, 49 Nev. 342, 246 P. 688.

■ Defendants contend also that if the location of South Extension No. 1 was valid, it being a lode location within a valid and preexisting placer, it does not carry with it both the lode and placer rights within its boundaries; that plaintiff is entitled only to the lode. We are of the opinion that the South Extension claim carries both the lode and rights to the surface within 25 feet on either side thereof. As stated by Mr. Lindley in his excellent work on mines: "If we assume that nothing is reserved out of the placer location but the lode itself, we practically concede that the reservation is of no substantial benefit to any one, as the right to enjoy it would be practically denied, * * * but the mining laws contemplate no such conditions. The only method by which a lode may be located is by defining a surface enclosing it."

The surface of a lode location without placer is defined by sec. 2333, Rev. St. of the United States (30 USCA, sec. 37), to be twenty-five feet of surface on each side of a lode. This section, as pointed out by Mr. Lindley, is somewhat ambiguous and has been the cause of conflicting decisions by the land department. But the question involved here has been directly, and we think correctly, decided by the supreme court of Colorado in Mt. Rosa M. M. & L. Co. v. Palmer, 26 Colo. 56, 56 P. 176, 50 L. R. A. 289, 77 Am. St. Rep. 245, contrary to defendant's contention.

In that case the lower court found that the appellee had valid lode locations within a placer and awarded him the full amount claimed, to wit, 300 by 1,500 feet in each of the claims. It was insisted by counsel for the appellant that he was entitled to only the mineral lodes, and not to any of the surface of the placer ground. The supreme court held that the lower court erred in adjudging to appellee surface ground in excess of 25 feet on

each side of the lodes in question. We quote the following from the opinion, which shows the reasoning of the court:

"The question was also involved upon the trial of the case of Campbell v. Iron S. M. Co. in the United States circuit court for this district, Judge Riner presiding. He entertained the view, and instructed the jury to the effect that a lode claimant, in case of a recovery, was entitled to no more than the vein or lode and fifty feet of ground, extending 1,500 feet in length.

"We think this instruction correctly defines the amount of surface ground to which a lode located within the boundaries of a placer is entitled, under the provisions of section 2333. As was said in Reynolds v. Iron S. M. Co. supra, 'this section made provision in three distinct classes of cases: (1) when the applicant for a placer patent is at the time in possession of a vein or lode included within the boundaries of his placer claim, he shall state that fact; and on payment of the sum required for a vein claim and twenty-five feet on each side of it, at $5 per acre, and $2.50 for the remainder of the placer claim, his patent shall cover both; (2) it enacted that where no such vein or lode is known to exist at the time the patent is applied for, the patent for a placer claim shall carry all valuable mineral and other deposits which may be found within the boundaries thereof; (3) but in case where the applicant for the placer is not in possession of such lode or vein within the boundaries of his claim, but such vein is *known to exist,* and it is not referred to or mentioned in the claim or patent, then the *application shall be construed as a conclusive declaration that the claimant of the placer mine has no right to the possession of the vein or lode claim.'*

"We think it is manifest that the lode or vein referred to in the first and third provisions is the same thing; and that whatever a placer claimant would acquire by availing himself of the privilege accorded him by the first provision of the section, is reserved by virtue of the third provision; in other words, that the same extent of surface ground that is incident to such lode

or vein, if located and patented by the placer claimant, is reserved from the placer patent in case of his failure to claim and patent the same. If he elects to patent the lode he is required to take twenty-five feet on each side of the center of the vein and pay therefor at the rate of $5 per acre. This is a privilege accorded to him, which he may avail himself of or not, as he sees fit. If he elects to waive this privilege, he may do so in one of two ways; either by expressly excepting the lode from his placer location and application for patent, or remain silent in regard to it. If silent, then by implication he declares that he makes no claim to such lode; and by such silence is bound to the same extent, and in the same manner, but no further than he would have been by an express declaration. By electing to make no claim to a known lode, or express declaration in regard to it, he must be understood as claiming, for placer purposes, the greatest possible area within the boundaries of his placer claim, and should be held to have relinquished only that which he might have taken, which is the lode, with the amount of surface ground provided. Why should there be any difference between the rights of claimants of known lodes within the boundaries of a placer? We know of none. The object of excepting known lodes from placer locations was to prevent titles to such lodes being obtained under the guise of a placer, at the same time, in order to protect claimants to each character of mineral locations to the greatest extent, and preserve to each that which was most valuable for particular purposes in connection with each class of claims. The lode, for convenient working, could not be limited to less than twenty-five feet on each side of the center of the vein; and the placer, which would be valueless without such surface rights, is permitted to take title to the remaining area accordingly. Those who controvert this view base their contention upon the provisions of section 2320, which it is said governs the length and width of all lode claims, whether made within the boundaries of a placer claim or not.

"An act on a particular subject must be construed as

a whole. Section 2320 refers to the location of lodes not conflicting with any other class of mineral locations, while by section 2333 special conditions with reference to conflicts between the two classes of mineral claims are specially provided for; and to that extent construing the act as a whole is a limitation or qualification of the provisions of section 2320, which relates, as stated, to the width of lode claims generally, and regulates the width of lode claims when made upon lodes within the boundaries of a placer, whether such lodes are located by the owner of the placer, or strangers to that title. By this construction, full force and effect is given to both of these sections, and the purpose of the statute is carried out. The government receives for its mineral lands the price fixed for lodes and placers respectively, and the superior right to the surface area of the placer claimant, acquired by his prior location or patent, is protected. It is the conclusion of a majority of the court that the limitation of the width of a lode claim in section 2333 is not only applicable to the placer claimant, but applies as well to others who locate a lode within the boundaries of his previously located placer.

"Chief Justice Campbell declines to express an opinion upon this question, because, in his judgment, the stipulation entered into by counsel eliminates it from the case."

Commenting on this opinion and subsequent ruling of the courts and land department in accord with it, Mr. Lindley says:

"The principle is recognized by the supreme court of Montana (Noyes v. Clifford, 37 Mont. 138). In the case of Clipper M. Co. v. Eli M. & L. Co. (194 U. S.), the Supreme Court of the United States says somewhat guardedly that the lode claimants would be entitled to at least 25 feet on each side of the middle of the vein.

"The views thus entertained by the supreme court of Colorado have recently received the approval of the secretary of the interior in a communication addressed to the attorney-general. * * * The secretary calls the attorney-general's attention to the views in the cases

heretofore commented on, and then gives his unqualified sanction to the doctrine announced by the court of Colorado, in the following language: 'This decision, coming from the court of last resort of one of the principal mining states, is entitled to grave weight, and upon careful consideration of the reasons assigned for the conclusion reached, the department is of the opinion that the interpretation given the statute in said decision is correct.' This opinion was referred to and followed by the secretary of the interior in the case of Daphne lode claim. With this concensus of opinion of the courts and the land department the rule may be considered as practically settled." Lindley on Mines (3d ed.), vol. 2, pp. 979–980.

■ It is claimed that the court erred in defining the limits of the South Extension No. 1 over the Grand Placer as so much thereof as is included within the boundaries formed by the end lines of the Grand Placer and parallel lines drawn through said end lines and 25 feet distant from each side of the discovery monument of plaintiff's South Extension No. 1. In the absence of a finding to the contrary, or evidence as to the location and direction of the lode we must assume it extended through the center of the 50 foot limitation defined by the court.

The judgment is affirmed.