[Civ. No. 565. Fourth Appellate District.—January 28, 1932.]

INYO MARBLE COMPANY (a Corporation), Appellant, v. J. A. LOUNDAGIN et al., Respondents.

James V. Brewer for Appellant.

Swallow & Richards for Respondents.

MARKS, J.—Appellant Inyo Marble Company, is a California corporation and the patentee of three placer mines containing about 480 acres within their exterior boundaries, to which they received a patent from the United States on August 26, 1921. The claims were first located in January, 1915, and the application for the patent was made on

December 6, 1919. The patent contained the following provision: "That should any vein or lode of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, be claimed or known to exist within the above-described premises at said last-named date, (Dec. 6, 1919) the same is expressly excepted and excluded from these presents."

The respondents claimed portions of the property described in the patent, and also adjoining property by reason of discoveries and locations of mineral lode or vein claims made by J. D. Leary and J. A. Loundagin in the latter part of 1925 and early in 1926. These locators went into possession of their claims, did assessment and development work thereon, shipped ore therefrom to smelters, and received pay therefor.

Appellant sought to quiet title to all land in its placer mine, to recover the value of the ore sold by respondents, and damages, and to enjoin respondents from further work upon the property described in its patent. The court found in favor of appellant's title to its placer mine with the exception of one lode or vein claim lying entirely within the placer mine, and those portions of two or such claims lying partly within the boundaries of the placer mine, title to which lode or vein claims was found to be in respondents. Leary No. 6 was entirely within the boundaries of the patented placer mine, and two others, Leary and Calamine Queen, were partly within and partly without such boundaries. The court held against respondents as to seven other lode or vein claims located by Leary and Loundagin, some of which were also partly without the boundaries of the patented ground.

The trial court further found that upon the three above-named claims of respondents there were, on December 6, 1919, and prior thereto, known veins or lodes in place containing valuable minerals and metals which were not conveyed to appellant by the government patent but were expressly reserved from the grant by the terms of the patent and by section 37, title 30, page 306, United States Code, Annotated, which provides as follows:

"Where the same person, association, or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be

made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of this chapter, including such vein or lode, upon the payment of $5 per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof. The remainder of the placer claim or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of $2.50 per acre, together with all costs of proceedings; and where a vein or lode, such as is described in section 23 of this title, is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of a vein or lode in a placer claim is not known, a patent for the placer claim shall convey all valuable mineral and other deposits within the boundaries thereof.''

Appellant assails this finding as not supported by the evidence and that it is contrary to it. We have gone over the record carefully and cannot agree with appellant. In fact the great weight of the evidence supports the finding. Kenneth K. Ash, who was employed by appellant as its superintendent in 1913 and 1914 and from the latter part of 1919 to early in 1921, testified that he knew of these valuable mineral and metal bearing lodes and ledges in 1913; that after midnight on January 1, 1920, he had two employees of appellant make quartz mining locations of the lode and veins for the company. The following extracts from his testimony are illuminating: ''Q. Who employed them to do it? A. I did. Q. At whose suggestion, if anyone, did the Inyo Marble Company have this done? A. As I recall it, it was my suggestion. Q. And why did you suggest this to the Company? A. They had placer locations and there was mineral back there which would conflict with the placer locations, and for the protection of the placer locations and avoid any outside ownership I suggested the location of the quartz or lode claims. Q. You speak of minerals—do you mean in ledge or lode form? A. In ledge and lode form. Q. Did you know that of your own knowledge? A. I did. Q. Did you instruct these men to make lode locations on

there for the Company? A. I did. Q. What was your purpose in doing that did you say? Q. To protect the placer locations from outside locators coming in and locating the mineral. Q. Then you mean you had them do this to keep somebody else from making lode locations? A. Yes, in conflict with the placer locations. Q. Now did you know whether or not there were any old lode locations on the ground prior to the time you employed these men to make these lode locations? . . . A. There were old locations. Mr. Swallow: You knew that of your own knowledge? A. Yes, sir, from the staking and from the monuments on the ground. Q. You had seen the monuments? A. I had seen the monuments. Q. Who paid these men for doing this work? A. The Inyo Marble Company. Q. Through your instrumentality? A. Through my instrumentality. Q. In what form did you pay them? A. They were always paid by check. Q. Will you kindly indicate or state generally what portion of the ground you instructed them to locate as lode claims? A. Well it was up here covering the work on which the Durability and Translucent and some other placer properties were located. . . . Q. Now when did you discover these ledges and lodes of mineral on this placer you have spoken of? A. I knew of that as early as 1913 and 1914. Q. And did you go over the ground again when you came back up in 1919? A. I did. Q. And was it because in your opinion the ground was subject to location for lode claims that you suggested to the Company that they be located as lode claims? A. It was.''

The evidence further shows that in April, 1918, James Wiggington located lode and vein claims in the placer property. He mined and kept possession of his claims and shipped and sold ore therefrom until they were ''jumped'' by the two employees of appellant on January 1, 1920.

There is other and ample evidence in the record which, with that already summarized, is sufficient to satisfy us that on December 6, 1919, there were lodes and veins in place carrying valuable deposits of minerals and metals which were clearly visible from the surface of the ground and from the shafts, cuts and tunnels upon it, and which were' then known to appellant and to many others in the mining district. The evidence to the contrary is meager.

As these lodes and veins were known at the time appellant applied for its patent, and, as it did not follow the legal procedure to acquire title to them, they were not granted to it, but were reserved by the patent and by operation of law, and remained part of the public domain, subject to entry by others. As is said in the case of *Mutchmor* v. *McCarty*, 149 Cal. 603, at page 611 [87 Pac. 85, 88]: "The decisions of the Supreme Court of the United States and of other courts of high authority, both state and federal, have settled the construction of this provision of the Revised Statutes and of these reservations in placer patents as applied to a great variety of cases, and especially as they apply to this case. A vein known to exist within the boundaries of a placer claim at the date of the application for patent, and not included in the application, may be located by an adverse claimant after the issuance of the patent, and a vein is known to exist within the meaning of the statute,— 1. When it is known to the placer claimant; 2. When its existence is generally known; 3. When any examination of the ground sufficient to enable the placer claimant to make oath that it is subject to location as such would necessarily disclose the existence of the vein. (*Iron S. M. Co.* v. *Mike & Star Co.*, 143 U. S. 403 [36 L. Ed. 201, 12 Sup. Ct. Rep. 453]; Lindley on Mines, sec. 781, and cases cited.)"

This also disposes of appellant's contention that the placer claims were in its possession and that a lode location could not be made thereon and a right thereby initiated by a trespasser. (*Clipper Min. Co.* v. *Eli Min. & L. Co.*, 194 U. S. 220 [48 L. Ed. 944, 24 Sup. Ct. Rep. 632, 636]; *Mt. Rosa M. M. & L. Co.* v. *Palmer*, 26 Colo. 56 [77 Am. St. Rep. 245, 50 L. R. A. 289, 56 Pac. 176, 180].) Since the lode and vein claims were not owned by appellant but were a part of the public domain, entry upon them for the purpose of location was not a trespass.

John Hagel, who was deceased at the time of the trial, made the survey of the placer claims in 1918 under instructions from the United States surveyor-general's office. A certified copy of these field-notes was produced from the public survey office of the general land department office of the department of the interior at San Francisco and offered in evidence by appellant. The trial court refused to admit it upon objection by respondents. This ruling is

assigned as error. This document contained the statement that there were no lodes or quartz-bearing veins of commercial value upon the claims and that they were chiefly valuable for the quarrying of marble and other stone. We may concede that the ruling of the trial court was erroneous and yet do not conclude that it constituted prejudicial error sufficient to require a reversal of the judgment. We can take judicial notice of the contents of these field-notes produced from the files of the land office. (*Sheehan* v. *Vedder*, 108 Cal. App. 419 [292 Pac. 175]; *Wood* v. *Kennedy*, 117 Cal. App. 53 [3 Pac. (2d) 366].) The statement in the field-notes of Hagel that the placer claims contained no lodes or quartz veins of commercial value could hardly overcome the quite convincing evidence that valuable lodes and veins did exist on the claims and were then known to appellant and others.

■ Appellant complains of the rulings of the trial court in admitting evidence of the appearance of outcroppings and of mineralized rock in the workings of the lodes and veins and of the value of the ore taken therefrom after December 6, 1919. It contends that since under the law, in order to defeat its title, knowledge of the lodes and veins must have existed on the date of its application for its patent, all evidence of such condition and of the value of the mineralized structures should have been limited to the knowledge obtained by witnesses prior to that date. While the premise of appellant is correct we cannot agree with its conclusion. The mountain structures were rock and the outcroppings of the lodes and veins could not have materially changed between the date of appellant's application for a patent and the time of the trial in this case. The question of the values of the deposits in the known lodes and veins is always important and often a controlling factor in determining the legality of a quartz location. (*Mutchmor* v. *McCarty, supra.*) Evidence of the values of the deposits need not be limited to what is known of these values at the time of the application for the placer patent, but may include knowledge gained by subsequent workings of the property. (*Noyes* v. *Clifford*, 37 Mont. 138 [94 Pac. 842], and cases cited.) The evidence of these values obtained after the application, is obviously evidence of a condition

existing at that time which in the very nature of things had not changed during the lapse of a few years.

Appellant further complains that the findings are inconsistent and do not support the judgment. It is true that some of them are rather loosely drawn and when considered by themselves without bearing in mind the pleadings and the issues presented by the pleadings they are somewhat confusing. In this case, in considering the effect of the findings, it must be borne in mind that the appellant claimed to be the owner of approximately 480 acres of ground which composed three placer locations. The respondents claimed to be entitled to the possession of ten lode or vein locations. The court upheld their rights in but three of them, disallowing their claims to the other seven. Part of these seven were outside of the boundaries of the placer location as were parts of two of the three claims which the trial court found belonged to respondents. The trial court found that appellant was the owner and in peaceful possession of all of its patented ground except those portions of the three lode or vein locations belonging to respondents which were inside the boundaries of the placer location. In its subsequent findings it did not repeat the descriptions but referred to the ''said ground'' described in the earlier findings. When we bear these facts in mind, the confusion disappears and they all support the judgment except in the particular hereinafter considered.

The final assignment of error which we must consider is full of difficulties. Appellant urges that the extent of each of the lode or vein locations which the trial court could award to respondents is limited by federal statute to an extreme length of 1500 feet and an extreme width of twenty-five feet on each side of the center line of each known vein or lode. In support of this contention it cites the cases of *Clipper Min. Co.* v. *Eli etc. Co., supra, Mt. Rosa etc. Co.* v. *Palmer, supra, Noyes* v. *Clifford, supra,* and *Puett* v. *Harvey*, 51 Nev. 40, 268 Pac. 41, 42.

In the Clipper Mining Company case the Supreme Court of the United States used the following language: ''For if the claim of the lode locator be sustained it carries, under sections 2320 and 2333 [30 U. S. C. A., secs. 23, 27], at least twenty-five feet of the surface on each side of the middle of the vein.'' Counsel for appellant attempts to construe this lan-

guage as a direct holding that the surface ground to which the lode locator would be entitled must be limited to twenty-five feet on each side of the middle of the vein. We think no such construction must be placed on this language in view of the fact that the question was not an issue in the case before the trial court and, further, in view of the federal statute in which the language used is, in substance, twenty-five feet on each side of the lode or vein.

In the Mt. Rosa Mining case the Supreme Court of Colorado used the expression "twenty-five feet on each side of the center of the vein" several times in discussing the extent of a quartz or other rock claim upon a known lode or vein within a placer location. In using this language the court seemed to have overlooked the provisions of the federal statute that the twenty-five feet shall be on each side of the lode or vein and not on each side of its center. These expressions become unimportant in view of the final conclusion of the Colorado court which is as follows: "It follows that the court below erred in adjudging to appellant surface ground in excess of twenty-five feet *on each side of the lodes in question*". (Italics ours.)

The case of *Noyes* v. *Clifford, supra,* is authority supporting the conclusion that the locator of a quartz or other rock claim upon a known lode or vein within the limits of a placer location is entitled to twenty-five feet of the surface on each side of the known lode or vein and not twenty-five feet from the center line.

The case of *Puett* v. *Harvey, supra,* does not support the contention of appellant but does support the conclusion that the locator of a known quartz or other rock claim within the limits of a placer claim is entitled to the lode or vein and twenty-five feet on each side thereof. The Supreme Court of Nevada said: "Defendants contend also that, if the location of South Extension No. 1 was valid, it being a lode location within a valid and pre-existing placer, it does not carry with it both the lode and placer rights within its boundaries; that plaintiff is entitled only to the lode. We are of the opinion that the South Extension claim carries both the lode and rights to the surface within 25 feet on either side thereof."

In the case of *Reynolds* v. *Iron Silver Min. Co.,* 116 U. S. 687 [29 L. Ed. 774, 6 Sup. Ct. Rep. 607], it was said:

"We are of opinion that Congress meant that lodes and veins known to exist when the patent was asked for should be excluded from the grant as much as if they were described in clear terms. It was not intended to permit the question of their title to be raised by some one who had or might get a better title, but to assert that no title passed by the patent in such case from the United States. It remains in the United States at the time of the issuing of the patent, and in such case it does not pass to the patentee. He takes his surface land and his placer mine, and such lodes or veins of mineral matter within it as were unknown, but to such as *were known* to exist he gets by that patent no right whatever. The title remaining in his grantor, the United States, to this vein, the existence of which was known, he has no such interest in it as authorizes him to disturb anyone else in the peaceable possession and mining of that vein. When it is once shown that the vein was *known to exist* at the time he acquired title to the placer, it is shown that he acquired no title or interest in that vein by his patent."

It is evident that appellant, under its patent from the United States, received title to the 480 acres described therein, excepting therefrom, the known lodes and veins and twenty-five feet of the surface on each side thereof. This left open for location the known lodes and veins and twenty-five feet of the surface on each of their sides, within the exterior boundaries of the placer mine. We think it the plain intention of the law to limit the known lode or vein locations within patented placer ground to these dimensions. The lode or vein locator could not claim or receive more ground within the placer mine than that reserved in the patent.

In the early case of *Eureka Con. Min. Co.* v. *Richmond Min. Co.*, 4 Sawy. 302 [8 Fed. Cas. No. 4548, p. 819], Mr. Justice Field speaking for the court defined the terms "vein" or "lode" as follows: "We are of the opinion therefore that the term ('vein', 'lode'), as used in the acts of Congress, is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock. It includes . . . all deposits of mineral matter found through a mineralized zone or belt coming

from the same source, impressed with the same forms, and appearing to have been created by the same process."

With the addition that the mineralized rock must be in place, this definition has since served the courts in this country. In many instances the two terms are used synonymously and interchangeably. In the case of the *United States* v. *Iron Silver Min. Co.*, 128 U. S. 673 [32 L. Ed. 571, 9 Sup. Ct. Rep. 195, 198], the definition of the term "lode" was further clarified as follows: "By 'veins or lodes' as here used, are meant lines or aggregations of metal embedded in quartz or other rock in place. The terms are found together in the statutes, and both are intended to indicate the presence of metal in the rock. Yet a lode may, and often does contain more than one vein." ██ We therefore conclude that the vein as well as the lode must have breadth as well as length; that the breadth varies in each formation and is limited by rock walls on either side which are sometimes denominated country rock; that the locator of a known quartz or other rock claim within the limits of a placer location is entitled to his known lode or vein and twenty-five feet of the surface on each side of the exterior lateral edges thereof and not merely twenty-five feet from its center.

The dimensions of the claims which the trial court set aside to respondents are as follows: Leary, 1500 feet in length by 541.9 feet in width; Leary No. 6 and Calamine Queen, each 1500 feet in length by 600 feet in width. The trial court did not find, and the evidence does not disclose the dimensions of the known lodes or veins which form the foundation of the rights of respondents. From the record it seems apparent that the dimensions of these lodes and veins are not sufficient to support setting aside to respondents all of the surface of the three claims as described in the judgment. From the evidence now before us it appears that some portion of the surface of the three claims extends beyond the lodes or veins and the area twenty-five feet laterally on each side thereof. It is therefore necessary to remand this case to the trial court for further proceedings. With the exception of the size of the three claims given to respondents, the judgment should not be disturbed.

The judgment is reversed with directions to the trial court to take evidence on the dimensions of the lodes or

veins known to be in the quartz or other rock claims, known as Leary, Leary No. 6, and Calamine Queen, on December 6, 1919, make additional findings upon such new evidence taken and render judgment in accordance with the findings and with the views herein expressed.

Barnard, P. J., and Jennings, J., concurred.